### GEO. W. BRACKENRIDGE V. CLARIDGE & PAYNE.

#### No. 628.—Decided March 3, 1898.

1.   **Broker—Sale of Land—Commissions.**

Where a broker brings to the principal a customer ready, able and willing to purchase land upon the principal's terms, and no sale is effected, the broker is entitled to his commission,—provided the failure result from the fault of the principal.   (P. 532.)

2.   **Same—Purchaser—Optional Contract.**

The willingness to purchase must appear by an offer to purchase, either express or implied, communicated to the principal, but may be upon condition that the title

is perfect. The purchase of an option or right to take the land within a given time, binding the one to sell but not the other to purchase, is not such offer. (P. 533.)

**3. Same—Agency—Undisclosed Principal.**

An agent negotiating for sale of land of an undisclosed principal, cannot be held for the commissions where, before liability accrued, the agency was disclosed and the parties entered into a contract with the real owner, not carried out through such owner's default. (P. 533.)

**4. Same—Defect in Title—Burden of Proof.**

It is incumbent upon a broker seeking to recover commissions for finding a purchaser for land, sale of which is defeated by defect in title, to show such defect; it is not established by the mere opinion of the attorney for the purchaser that the title was bad; such case is distinguishable from those in which the broker procures a binding contract, enforceable if the title is good. (P. 534.)

**5. Same—Case Stated.**

Plaintiffs at instance of defendant found a proposed purchaser for land, whereupon defendant, himself an agent, disclosed his principal, with whom such purchaser contracted for an option for its purchase in thirty days; but the purchaser afterward pronounced the title bad, and received back the amount paid for the option. Held, that defendant was not liable to plaintiff for commissions. (P. 530 to 545.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

Claridge & Payne sued Brackenridge for commissions for negotiating a sale of land, and recovered judgment, which was affirmed on appeal by Brackenridge, who then procured writ of error.

*Franklin & Cobbs*, for plaintiff in error.—It must appear from plaintiffs' petition that they performed the contract alleged, by procuring and presenting a purchaser to defendant who was able, ready and willing to buy the land, and who, in fact, made or offered to make a binding contract with the vendor to purchase, unless it appear that defendant refused to sell. Runyon v. Wilkinson, 31 Atl. Rep., 390; Mattingly v. Pennie, 39 Pac. Rep., 202; Kirkland v. Little, 41 Texas, 456; Mims v. Mitchell, 1 Texas, 442; Malone v. Craig, 22 Texas, 609.

The undisputed evidence shows that no binding contract to purchase the land was ever made by the proposed purchasers nor did they offer to make any such contract. The only written agreement in evidence was the option given by the San Antonio National Bank. Conklin v. Krakauer, 70 Texas, 739; Love v. Miller, 21 Am. Rep., 196; Mattingly v. Pennie, 39 Pac. Rep., 202.

Before plaintiffs may recover it must appear that the proposed purchasers did in fact enter into a contract to purchase, mutually binding upon themselves and the defendant. An option is not such a contract. The great preponderence of testimony shows that no contract of purchase was ever sought or made by the proposed purchasers. Conkling v. Krakauer, 70 Texas, 735; Kimberly v. Henderson, 29 Md., 512; Love v. Miller, 21 Am. Rep., 196; Wilson v. Mason, 42 N. E. Rep., 134; Stitt v. Hindekopen, 17 Wall., 384; Warvelle on Vendors, 187; Runyon v. Wilkinson, 31 Atl. Rep., 390; Mattingly v. Pennie, 39 Pac. Rep., 202; Parker v. Walker, 8. S. W. Rep., 391.

An agreement to purchase land provided a certain attorney says the title is good, is not such an agreement as will constitute the party a "purchaser" in law, and entitle the broker to his commission. Hammond v. Crawford, 66 Fed. Rep., 425; Tombs v. Alexander, 3 Am. Rep., 349; Gilchrist v. Clark, 8 S. W. Rep., 573; Aigler v. Carpenter, 33 Pac. Rep., 593.

There was no evidence introduced showing that the title was imperfect. The only testimony upon that line was from Judge Masterson, to the effect that the abstract of title showed location by Confederate certificates and referred to the case of Von Rosenberg v. Cuellar, 80 Texas, 249, and this, of itself, did not show a defective title. Smith v. McGaughey, 87 Texas, 61; Cocke v. Finks, 41 S. W. Rep., 96.

*Clamp & Harris, Dan Lewis* and *J. O. Terrell,* for defendants in error.—If it appears by the allegations of the petition, that defendant agreed with plaintiffs that if they would procure a purchaser for his land for $3.50 per acre that defendant would pay them 5 per cent commission on such sale, and that plaintiffs did produce a purchaser who was able, willing and ready to buy the land at $3.75 per acre, and that the sale was never in fact consummated because of defect in the title to the land, the plaintiffs having done all they agreed to do, the petition shows a good cause of action, and is not subject to demurrer, and upon proof of such allegation plaintiffs were entitled to recover. Edgar v. City of Galveston, 46 Texas, 421; Wells v. Fairbanks, 5 Texas, 582; Oliver v. Chapman, 15 Texas, 400.

It was only necessary for plaintiffs to allege and prove, under the contract as made with defendant, that they procured a purchaser who was ready, able and willing to buy the land at price and upon terms acceptable to defendant; and where the allegation is that the sale was defeated solely upon account of defect of title of the land, no written contract between the seller and buyer is necessary. Gilchrist v. Clarke, 8 S. W. Rep., 572; Cheatham v. Yarborough, 15 S. W. Rep., 1076; Sullivan v. Hampton, 32 S. W. Rep., 235.

The jury were authorized to find for plaintiffs when the plaintiffs proved: (1) that defendant agreed with plaintiffs that they should bring him a purchaser for the land at as much as $3.50 per acre; (2) that he agreed to pay 5 per cent commission on price of the land; (3) that plaintiffs presented to defendant such purchaser, who was able, ready, and willing to buy the land at the price of $3.50 per acre or for such price as was satisfactory to defendant; and (4) that the sale would have been consummated upon price and terms satisfactory to the defendant but for the fact that title was defective. Parsons, Contracts, 110, note 2; 3 Wait, Ac. & Def., 284; White & W. Civ. Cases, sec. 843; 14 Cent. Law Journal, 204; Parker v. Walker, 8 S. W. Rep., 392; Cheatham v. Yarborough, 15 S. W. Rep., 1076.

When the principal relies on the validity of his title, which he represents and claims to be good, the right of the agent who negotiates a

valid sale of the property under his power at the price demanded, to compensation, is not affected by any subsequent disagreement between his principal and the purchaser regarding the question of title,—and this, though such disagreement may result in a cancellation of the contract.    Conkling v. Krakauer, 70 Texas, 735.

A broker is entitled to compensation when he procures a purchaser with whom his principal is satisfied, and who actually contracts for the property at a price satisfactory to the owner.    Conkling v. Krakauer, 70 Texas, 735.

In a contract for the sale of land it is sufficient if a memorandum thereof be in writing and signed by the party to be charged therewith. Fulton v. Robinson, 55 Texas, 401; Dial v. Crain, 10 Texas, 444; Peters v. Phillips, 19 Texas, 74.

An agreement for the sale of land which may or may not be performed within a year, is not required by the statute of frauds to be in writing.    Thouvenin v. Lee, 26 Texas, 612.

A memorandum of the sale of land which is definite and certain enough within itself to enable contract to be made out as to parties, consideration, and subject matter, without resort to parol evidence, even though in the nature of a receipt, is sufficient to take the contract out of the statute of frauds.    Johnson v. Granger, 51 Texas, 42; Dial v. Crain, 10 Texas, 444; Peter v. Phillips, 19 Texas, 74; Fulton v. Robinson, 55 Texas, 401.

An agreement to purchase land, complete in every respect, and pending examination of title only, is such an agreement as will entitle the broker to his commission.    Conkling v. Krakauer, 70 Texas, 735; Gelatt v. Ridge, 23 S. W. Rep., 882.

GAINES, CHIEF JUSTICE.—The defendant in error sued the plaintiff in error to recover commissions as real estate brokers for procuring at plaintiff-in-error's instance a purchaser for a tract of land.    They alleged in substance that Brackenridge entered into a contract with them, in which at his instance they undertook to make a sale of a large tract of land in consideration of his promise to pay them a commission of five per cent upon the purchase money, and that they procured purchasers ready, willing and able to buy the property, but that the purchase was not consummated on account of a defect in his title.

There was evidence to show that the plaintiff in error employed Claridge to procure a sale of the land, and that Payne subsequently became the partner of Claridge and actively participated in the negotiations for the attempted sale.    Claridge, who made the contract with Brackenridge, in his testimony states the latter's promise in this language—"that is, that if they brought him a buyer for the land that would pay him his price for it, he would pay me a commission." Claridge also testified that at the time of making the contract Brackenridge represented that he was the owner of the land.    Subsequently Claridge found Messrs. Beney and Freeman of the State of Iowa who in

connection with him examined the land with a view to negotiating for its purchase.    After the examination Claridge introduced the proposed purchasers to Brackenridge.    The depositions of Beney and Freeman were read in evidence upon the trial in behalf of the plaintiffs, and their purpose in seeking the interview with Brackenridge is very clearly disclosed in their testimony.    Beney among other things testified as follows: " * * * I first met Colonel Brackenridge at San Antonio National Bank on August —, 1895.    Was taken to the bank by Mr. Claridge and there introduced either by Mr. Claridge or L. N. Disney of Houston. I went to the bank at the suggestion of Mr. Claridge for the purpose of talking over with Col. Brackenridge the terms and conditions he would give us on an option of sixty days on the Lytle Ranche looking to a purchase of same if title proved good.    Col. Brackenridge refused to give an option on Lytle Ranche for longer than thirty days and on August 2, 1895, we concluded to accept his offer of option of $3.75 per acre and privilege of thirty days in which to examine title.    As to the agreement, it was principally oral.    We received a receipt in writing from defendant for draft of one thousand dollars, specifying that draft was for option of thirty days on land deeded by Sheriff of Medina County to G. W. Brackenridge.    The receipt was returned to the San Antonio National Bank August 31, 1895, on surrender of the one thousand dollars paid for option.    As was stated in my answer to interrogatory sixth; the only writing was the receipt for the draft for one thousand dollars, stating that it was paid for option, and that nine thousand dollars additional was to be paid at the expiration of thirty days and balance on or before five years.    * * *    Col. Brackenridge stated that the title to the Lytle land was vested in him, but said that the San Antonio National Bank was the direct owner of the lands, and signed the option receipt, 'San Antonio National Bank by G. W. Brackenridge, President.'    * * *    We expected to raise the money from our own resources."    Freeman also testified: "* * * I was introduced by either Mr. Claridge or Mr. Disney to Col. Brackenridge at the bank where we went at the suggestion of Mr. Claridge for the purpose of talking over the terms and conditions he would give us on an option of sixty days on the Lytle Ranche intending to purchase the same if title was good.    Col. Brackenridge refused to give an option on Lytle Ranche for a longer time than thirty days, and on August ——, 1895, we decided to accept his offer of option of $3.75 per acre and privilege of thirty days to look up title.    The agreement was mainly oral.    We received in writing from Col. Brackenridge a receipt for draft of one thousand dollars, specifying that it was paid for option of thirty days on land deeded by Sheriff of Medina County to George Brackenridge. This receipt I suppose was returned to the San Antonio National Bank by my partner upon the surrender of the one thousand dollars paid for the option, and is now not under my control.    The only writing was the receipt above mentioned.    The contract was one thousand dollars cash on the option and nine thousand dollars to be paid in thirty days

and balance on or before five years at six per cent. All parties understood it to be an oral agreement. Col. Brackenridge said in his opinion the title was good. There was no other writing in the trade, except the option receipt referred to. The agreement to purchase made on the lands was subject to examination of title. That if title proved to be defective the negotiations were to cease. I do not know of my own knowledge whether there was any other writing in the transaction or not, as I did not return to Texas with my partner on August 31, 1895. Col. Brackenridge stated that the title to the land rested in himself, but that the San Antonio National Bank was the direct owner of the land, and signed the option receipt as follows: 'San Antonio National Bank by Geo. W. Brackenridge, President.' "

It is evident that during the negotiation for the option it was disclosed that Brackenridge was not acting for himself, but as the agent and trustee of the bank-of which he was president. This is shown by the writing referred to in the testimony of Beney and that of Freeman. That writing was introduced in evidence, and is as follows:

"Received this 2nd day of August, 1895, from Messrs. Bennie & Freeman a sight draft on the Mount Ayr Bank of Mount Ayr, Iowa, for one thousand dollars in payment for an option of thirty days upon a certain tract of land described in deed from the sheriff of Medina County to Geo. W. Brackenridge, dated the 24th day of July, 1894, aggregating about eighteen thousand seven hundred and five acres, agreed to be sold to them at three dollars and seventy-five cents per acre upon the following terms. Nine thousand dollars additional, to be paid within thirty days, balance in notes of one thousand dollars each payable in five years with six per cent interest semi-annually. Notes or coupons on each note to be given retaining the privilege to pay any or all notes at any time before maturity.

"If draft for one thousand dollars is not paid this receipt and agreement to be void.        San Antonio Nat. Bank,
                          "By G. W. BRACKENRIDGE, President."

The testimony further discloses that the attorney of the proposed purchasers advised that the title to a large part of the lands was bad, and that for that reason the proposed purchasers declined to take the land and demanded the $1000 paid for the option, and that the money was refunded by the bank.

Do these facts show that Claridge & Payne had earned the commissions claimed by them for procuring a purchaser of the land? We understand the law to be established by the great weight of authority that, where under a contract like the present the broker brings to the principal a customer who is ready, able and willing to purchase the land upon the principal's terms, and no sale be effected, the broker is entitled to his commissions,—provided the failure result from the fault of the principal. It is evident also, both from the testimony of Beney and

from that of Freeman, that when they were introduced to Brackenridge they were then neither ready nor willing to purchase. The willingness to purchase must appear by an offer to purchase, either express or implied. Of course the offer may be, and we presume usually is, upon the condition, also either express or implied, that the title is perfect. A mere willingness existing in the mind of the customer and not communicated to the principal cannot effect the rights of the parties. What Beney and Freeman intended to do in this case—what they offered to do—was to procure an absolute right for a limited time of buying the land—provided they should determine to do so. They did not propose to purchase or to bind themselves to purchase upon any condition whatever. The writing signed by the bank through Brackenridge as its president fully evidences their proposal to take an option, and not to bind themselves to purchase. Though in the form of a receipt, this is a valid and binding contract expressing in writing the terms upon which the minds of the parties met, and is not subject to be added to or varied by parol evidence. It follows that, in our opinion, at the time the negotiation was entered into which resulted in this contract the proposed purchasers had not determined to buy the lands upon the terms proposed by Brackenridge; and that therefore up to that period the plaintiffs had not complied with their agreement, and had no cause of action against him.

Can Brackenridge be held liable by reason of what subsequently occurred? Claridge testified that when Brackenridge employed him the latter told him he was the owner of the land. Therefore, if that were true and if Brackenridge was acting for the bank he could either hold him or his undisclosed principal upon the contract. But in order to hold Brackenridge he must either have brought to him a purchaser ready and willing to buy upon his terms, or Brackenridge must in his own right have agreed upon different terms, to which the parties would have acceded but for a defect in the title. When, however, before any liability accrued, the agency was disclosed, the parties entered into a contract with the bank as the owner of the land Brackenridge could not, in our opinion, be held liable for any default of the bank upon that contract. It is settled that the contract for the option is that of the principal and not that of the agent, and that parol evidence to the contrary is not admissible. Heffron v. Pollard, 73 Texas, 96. If Brackenridge's agency was not disclosed in the first instance as claimed by Claridge, and if the title was imperfect, and for that reason alone Beney and Freeman declined to purchase under their option, it may be that the bank was liable for the commissions. But we do not think that the agent of an undisclosed principal can be held responsible for the subsequent dealings with the principal after the agency is disclosed. The theory of the case of the plaintiffs is that the defendant contracted, as if for himself; and upon this theory, in order for them to recover, they must have brought him a purchaser ready, willing and able to purchase. This as we have seen they did not do.

But there is another question which arises upon the facts of this case. While a broker may recover commissions of his principal who holds himself out as having a good title when he has procured a purchaser and a sale is not effected by reason of a defect in the title, yet in our opinion the burden is upon him to show the defect. The theory of the recovery in such case is not that the broker has brought a party ready, able and willing to buy, but that he would have been willing but for the fault of the principal in failing to make good his implied warranty, that he would be able to make a good title to the property. Therefore we think in such a case it is incumbent upon the broker to show the want or defect of title. The principal may stipulate that he will exhibit a title satisfactory to the purchaser or to his counsel, but in the absence of an express agreement to that effect that obligation cannot be implied from the mere employment to procure a purchaser. We have not found the point, expressly decided; but in numerous cases in which it has been held that commissions could be recovered where the proposed purchaser was ready to make the purchase but for an infirmity in the title, the specific defect has been shown in the case. There is a line of cases which hold, that, where the broker has made or has caused to be made a binding contract with the purchaser, and the latter refuses to perform the agreement by reason of some supposed flaw in the title, the agent is entitled to his commissions without showing that the title is bad. Parker v. Walker, 86 Tenn., 566, and cases there cited. But these cases proceed upon the principle that when the broker has procured a binding contract he has performed his obligation; for if the title is good the principal may enforce the contract of sale; if bad, the failure to consummate the transaction is attributable to his own fault. But when no written contract of sale has been procured, and the proposed purchaser declines to take the property on account of some supposed infirmity in the title, it is incumbent upon the broker, in order to recover, to show by competent evidence that the defect actually exists.

Did the defendants in error show that the title to the lands was defective? The evidence relied on is that of the attorney of the proposed purchaser, who testified that it was not good. His conclusion necessarily involved his opinion as to the law of the title. The opinion of counsel, however able and learned, is not evidence. The court must determine the law for itself. The fact stated without objection, by the counsel who examined the title, that a large portion of the lands were located by virtue of certificates commonly known as "Confederate Certificates," does not show that the title to such lands is invalid. Such a certificate properly located, surveyed and returned with field notes to the land office confers a good title upon the holder. Von Rosenberg v. Cuellar, 80 Texas, 249; Smith v. McGaughey, 87 Texas, 61. Whether those in question were properly or improperly located does not appear.

We conclude that upon the trial the plaintiffs failed to make a case. It follows, that the charge of the court, which is assigned as error,

should not have been given. A charge which authorized a verdict for the plaintiff upon any phase of the testimony was necessarily erroneous. The assignment is good though the reasons urged in its support may be untenable. Clarendon, etc., Co. v. McClellan Bros., 86 Texas, 179.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*