GULF, COLORADO & SANTA FE RAILWAY COMPANY v. J. W. WALTERS.

Decided February 5, 1908.

**1.—Railroads—Licensee—Riding on Freight Train.**

One who habitually rides on a freight train with the knowledge and consent of the railroad employees, does not occupy the position of a trespasser, and the railroad company owes him the duty of exercising at least ordinary care to prevent injuring him.

**2.—Charge—Misstatement of Pleadings—Harmless Error.**

While it is the duty of the court to state correctly in its charge the

allegations of the pleadings, a failure to do so is not always reversible error. Rule illustrated.

### 3.—Appeal—Assignment of Error—Rule.

An assignment of error which embraces the entire charge except the preliminary statement of the issues and the measure of damages, offends against the rules for briefing. The alleged error should be pointed out by propositions.

### 4.—Same—Motion for New Trial.

An assignment of error based upon the insufficiency of the evidence to support the verdict, should show that this was made a ground in the motion for a new trial.

### 5.—Charge—Issues—Affirmative Presentation.

A party to a suit has the right to have his theory of the case affirmatively presented to the jury, and when the court fails to do so in the main charge the refusal of a requested charge so presenting a party's case, is reversible error.

#### ON REHEARING.

### 6.—Trial—Refusal of Charges—Discretion.

The trial judge must be allowed a large discretion in the conduct of a trial. Record considered, and held that the trial judge did not abuse his discretion in refusing to call back the jury after they had received the main charge, but had not begun their deliberations, and give them special charges then for the first time presented and requested.

### 7.—Appeal—Question of Fact—Jurisdiction.

It is not only within the constitutional power, but is the duty of a Court of Civil Appeals to reverse the judgment of the trial court and to grant a new trial when it appears that the verdict is so against the great weight and preponderance of the evidence as to be manifestly wrong. Evidence considered, and held insufficient to support the verdict and judgment, and therefore to require a reversal of the cause.

### 8.—Pleading—Charge—Misstatement.

Where plaintiff's petition alleged, in substance, that, the conductor knowing of plaintiff's perilous position, defendant's agents caused the train to start, a charge which authorized a verdict for plaintiff if the conductor, knowing of plaintiff's perilous position caused the train to start, was not the case made by the pleading and therefore, error.

Appeal from the District Court of Jefferson County. Tried below before Hon. L. B. Hightower, Jr.

*J. W. Terry* and *F. J. Duff,* for appellant.—The allegations of plaintiff's petition to the effect that he knew that he was embarking upon an improvised caboose, and that the same was more dangerous to get on and off than regular cabooses, especially in the nighttime, and that he knew that he was to disembark from the caboose in the nighttime, sets up such a case of assumed risk and contributory negligence as makes it impossible for him to recover. Coley v. Kansas City So. Ry. Co., 95 S. W., 96.

Where the verdict of a jury is based solely on the testimony of the plaintiff in a case, and that testimony is contradicted not only by written and verbal statements made by the plaintiff in regard to the same subject matter, but by the direct and positive testimony of five or six disinterested witnesses as well as by the physical facts found and existing at the place of injury, such as the blood and

imprint of the person on the ground, the location of the switch track, the impossibility of getting on the main track without the switch being thrown, etc., the court having failed to instruct a verdict in favor of the defendant, should, on a motion for a new trial, set the same aside as being based on evidence without sufficient probative force to sustain it. Texas & P. Ry. Co. v. Ball, 96 Texas, 625; Houston & T. C. Ry. Co. v. Loeffler, 59 S. W., 558; Joske v. Irvine, 91 Texas, 575; Light v. Brown, 26 S. W., 887; Piff v. Heder, 41 S. W., 166; Brown v. Perez, 79 Texas, 157; Missouri Pac. Ry. Co. v. Somers, 78 Texas, 439.

The court having submitted to the jury the theory of the plaintiff as to the negligence causing the injury, the defendant was entitled to have an affirmative submission of its defense of contributory negligence on the part of the plaintiff also submitted, which was, that if they believed from the evidence that the plaintiff attempted to disembark from the train before it had reached its proper place, and in doing so was injured, or that if he took hold of the sliding door and the movement of the same caused him to become overbalanced and fall, or if he attempted to step from the train after becoming overbalanced, missed the platform and was injured, then they should find for the defendant company. Nevil v. Mitchell, 28 Texas Civ. App., 89; Missouri, K. & T. Ry. Co. v. McGlamory, 89 Texas, 635; Gulf, C. & S. F. Ry. Co. v. Shieder, 88 Texas, 152; Missouri, K. & T. Ry. Co. v. Rogers, 91 Texas, 52; Gulf, C. & S. F. Ry. Co. v. John, 98 Texas, 76.

*R. A. John, Chenault O'Brien* and *L. B. da Ponte,* for appellee.—The pleadings and evidence are sufficient to sustain the verdict and judgment herein rendered. Chicago R. R. Co. v. Martin, 79 S. W., 1101; San Antonio & A. P. Ry. Co. v. Jazo, 25 S. W., 712; Claiborne v. Missouri, K., etc., Ry. Co., 21 Texas Civ. App., 648; Wilcox v. San Antonio Ry. Co., 11 Texas Civ. App., 487; Mexican National Ry. Co. v. Crum, 6 Texas Civ. App., 702; Houston & T. C. Ry. Co. v. Grigsby, 13 Texas Civ. App., 639.

REESE, ASSOCIATE JUSTICE.—This is a suit by J. W. Walters for damages for personal injuries alleged to have been caused by the negligence of the defendant, the Gulf, Colorado & Santa Fe Railway Company. From a verdict and judgment for plaintiff defendant appeals.

The allegations of the petition with regard to the accident whereby appellee sustained his injuries are as follows:

"That on or about the 4th day of May, 1905, it became necessary to ride in the caboose in the service of defendant company from Bland Lake to Silsbee, and at the instance and request of conductor in charge of the construction train and caboose, and with the knowledge of said conductor, plaintiff did board said caboose to make the said journey. That the caboose in which the plaintiff was riding on this occasion with the knowledge and consent of defendant and its conductor as aforesaid was not a regular caboose car, but one improvised by the substitution of a box car therefor which made

ingress and egress to and from said car more difficult and dangerous than a regular caboose, which fact, as well as the fact that plaintiff was to alight therefrom in the nighttime at the station of Silsbee, was well known to those in charge of said train. That during the course of said trip to Silsbee, plaintiff's presence on said train was at all times known to said conductor, and plaintiff was expressly assured and promised by said conductor in charge that said train would stop at said station long enough for plaintiff to alight therefrom; that thereafter, when said train stopped in the nighttime and darkness at Silsbee for the purpose of letting plaintiff alight therefrom, and while he was in a prompt, careful and prudent manner undertaking to alight therefrom, and in the act of alighting in the presence of and with the knowledge of said conductor, but before he had sufficient time to do so in safety, and while he was in said perilous position of alighting, said train was carelessly, negligently and recklessly caused by defendant's agents to suddenly start and lurch forward in wanton and reckless disregard of plaintiff's safety and without any care on the part of defendant's agents, which caused plaintiff to fall, and in doing so his foot was unavoidably caught and run over by the wheels of said caboose car, which was crushed and mangled so that all the bones had to come out and were taken out in fragments."

Appellant answered by general demurrer, special exceptions and general denial, and specially set up that appellee was a trespasser and assumed all the risk of riding on the train and that he received his injuries as the result of attempting to alight from the train before it reached the proper place for passengers to get off.

The evidence shows that appellee was in the employ, as a cook, of one Evans, who had a contract with appellant for feeding men engaged in construction work, and that he was in the habit of riding to and fro on appellant's road, and in the caboose attached to the construction train, with the consent of appellant, either express or implied. At the time of the accident appellee was riding in the caboose with the knowledge and consent of the conductor in charge of the construction train. The train consisted at that time of only the engine, tender and caboose and was going to Silsbee from the place where the construction gang was at work. Appellant's evidence tended to show that just before reaching the depot at Silsbee, where appellee was to get off, the engine stopped in order to allow the head brakeman to get off and open a switch, which had to be done to let the engine and caboose in on the line running up to the place of alighting, in front of the depot. The conductor got off here and went to the depot. After pulling through the switch very slowly and just as the engineer was about to stop to allow the head brakeman to get on, the engineer received a signal from the conductor to stop, and just here it was found that appellee had gotten off the caboose, and in doing so had received his injuries, the import of the evidence being that he had attempted to alight from the caboose below the switch and either at the first stop or while the train was slowly moving through the switch, and had stumbled or fallen so that his foot was caught under the wheels. The evidence

offered by appellee, being his own testimony only, tended to show that there was but one stop, and that was immediately in front of the eating house in the depot, where passengers usually alighted from the train; that while he was in the act of alighting, and in a dangerous position owing to the construction of the caboose and in the immediate presence of the conductor, who knew of his dangerous position, the conductor signaled the engineer and the train was started with a sudden and unusual jerk, causing him to lose his hold on the side or door of the caboose with the result that when he struck the ground he was thrown with his foot under the wheels, in which position it was crushed.

There was no error in overruling the general demurrer, on the ground that the allegations showed that plaintiff was guilty of contributory negligence, nor in refusing to give appellant's special charge No. 1, nor in refusing to instruct a verdict for appellant. Appellee was not a trespasser, nor did the evidence make a case of contributory negligence, as matter of law. The first, second and third assignment of error presenting these points are overruled.

In stating the allegations of plaintiff's petition, in the charge, the court was in error in stating that it was alleged that the conductor, with the knowledge that plaintiff was in a perilous position, caused the train to start. The allegations of the petition are, in substance, that while plaintiff was in the act of alighting from the train in the presence and with the knowledge of the conductor, and while he was in such perilous position the defendant's agents negligently caused the train to start. It is not alleged that the conductor caused the train to start. This does not, however, present reversible error. We merely call attention to it in order that it may be avoided upon another trial. In stating the allegations of pleadings the charge should always give their substance correctly.

In its fifth assignment of error appellant complains of the charge of the court submitting the issues to the jury. The assignment embraces the entire charge except the preliminary statement of the issues as made by the pleadings, and the charge on the measure of damages. We do not understand that the charge presents, or was intended to present, the question of discovered peril, nor is that issue presented by the evidence. The evidence from appellee's standpoint presented the issue of negligence of appellant's agents in charge of the train in causing it to start while appellee was attempting to alight therefrom with their knowledge and with the knowledge that from his position at the time he would be placed in peril by the movement of the train. We think there was no error in the charge.

The assignment offends against the rules for briefing. The errors in the charge should have been more specifically pointed out by distinct propositions.

As the judgment must be reversed upon another ground we pretermit discussion of the sixth assignment of error, that the verdict of the jury is against the overwhelming weight of the evidence. We call attention to the fact that it nowhere appears, in connection with this assignment, that this was made ground for a new trial, nor

does it appear that any motion for new trial was made. Error should have been assigned to the ruling of the court in overruling the motion for a new trial, or, at least, it should have been made to appear that such motion was made, that it embraced this ground, and that it was overruled. (Armstrong v. Elliott, 49 S. W., 635.)

It appears that there was some misunderstanding between counsel for appellant and the court as to what issues would be embraced in the charge, and that after the charge was read and the jury retired appellant's counsel presented certain special charges which they desired given to the jury, but which the court refused to receive or consider. It appears from the court's qualification of the bill of exceptions that the jury had just gotten out of the courtroom when the special charges were presented, and it is clear that they had not more than reached the juryroom and had not begun their deliberations upon the case. We are inclined to think, in the circumstances stated in the bill and in the court's explanation, that the charges should have been received by the court, and acted upon. The action of the court seems to have been more rigorous and harsh than necessary for a proper dispatch of the business of the court. We do not wish, however, to be understood to deny the discretion of the court to refuse to call a jury back after it has received the charge of the court, and retired from the courtroom, to receive special instructions requested by either party. We only mean to say that in the present case, there was not a proper use of such discretion.

Considering then the special charges so presented we are of the opinion that the instruction requested by appellant and embraced in paragraphs 5 and 8 of the requested charges, should have been given. These charges presented appellant's theory of the time, place and manner in which the accident occurred, which was supported by substantially all of the testimony except that of appellee himself, and this appellant had a right to have done. (Missouri, K. & T. Ry. Co. v. McGlamory, 89 Texas, 635.) The charge of the court presented only the appellee's version as to the manner in which the accident occurred. In addition to the general instruction that if the jury did not believe that it occurred in this way to find for the defendant, appellant had the right to have its own version of the occurrence, as presented by the evidence, affirmatively presented.

The other assignments of error are overruled without discussion. As the case is to be remanded for another trial it is not improper to add, that we conclude that according to the undisputed evidence appellee was not a trespasser at the time he received his injury, but was rightfully in the caboose for the purpose of being carried to Silsbee. Although as such licensee appellant did not owe him that high degree of care which it was required to exercise towards passengers, it did owe him the duty of exercising ordinary care for his safety and protection from injury at the hands of its agents and servants.

For the error in refusing the charges aforesaid the judgment is reversed and the cause remanded.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

Upon the hearing of this appeal the judgment of the trial court was reversed and the cause remanded for error in refusing to consider certain charges requested by counsel for appellant, some of which, we concluded, should have been given. On further consideration, upon appellee's motion for rehearing, we think we were in error in our conclusion, upon the facts stated by the court in approving the bill of exceptions, that it was an improper exercise of the court's discretion to refuse to consider the requested charges presented, after the jury had received the charge of the court and had retired from the courtroom to consider of their verdict. It appears that counsel for appellant had had ample time to present the charge before the jury retired, the same having been already prepared. The trial judge must be allowed a large discretion in such matters and we are unwilling to adhere to our criticism that he abused such discretion in the present case and to reverse the judgment upon that ground.

This requires us, however, to pass upon the sixth assignment of error, complaining that the judgment is against the overwhelming weight and preponderance of the evidence, which, in view of a reversal upon other grounds, was not passed upon in the former opinion, but which must now be disposed of.

The assignment of error is not specifically to the action of the trial court in refusing a motion for a new trial on this ground, but it clearly appears from the assignment and propositions in the brief that the point reserved and presented for review is predicated upon this action, and in such case, under the liberal rule announced in Clarendon Land Co. v. McClelland Bros. (86 Texas, 191), we think the assignment should be considered as presenting that objection. The motion for new trial shows that one of the grounds urged was that the verdict was against the great and overwhelming preponderance of the evidence.

We may say, *in limine,* that it is not only within the constitutional power, but that it is the duty of the Court of Civil Appeals to reverse the judgment of the trial court, and to grant a new trial when the evidence is conflicting, where it appears that the verdict is so against the great weight and preponderance of the evidence as to appear to be manifestly wrong. In such case it is said that the verdict can not upon any reasonable hypothesis be attributed to the calm and dispassionate judgment of the jury upon the evidence, but must be attributed to passion or prejudice or some other improper motive. The power and duty of the Court of Civil Appeals, in such case, is so well established that no citation of authority is necessary. The Court of Civil Appeals will always hesitate to exercise this power, mindful of the fact that in our system of jurisprudence the jury are the exclusive judges of the facts proven, the weight to be given to the evidence, and of the credibility of the witnesses. As well established in our jurisprudence as this principle, is the principle that the court is vested with the power to review and, if necessary, revise the action of the jury in a proper case. It was never intended that

the court should be deprived of the power of reviewing the action of the jury as to matters of fact in all cases where there is any evidence to support their finding, and that the question of deciding in all cases of conflicting evidence should be left to the absolute and uncontrollable judgment of the jury. This court, in such cases, has the same power as is vested in the trial courts, with this distinction, when it comes to the exercise of that power, that the action of the trial court in refusing a new trial on this ground, adds very great weight to the verdict and requires that a stronger case of wrong be made out to justify the exercise of the power by this court than would be required to invoke the exercise of the like power on the part of the trial court. Still, giving due and proper weight to all of these considerations, the power, and the corresponding duty, of the Court of Civil Appeals is clear, when the record presents a proper case for its exercise.

The evidence in this case established that appellee was injured while alighting, or just as he had alighted, from a car or caboose on appellant's road, the car having the door for entrance and exit at the side. We have held that he was not a trespasser, but was riding in the caboose by permission of the company, and that the company owed him the duty of exercising ordinary care for his safety and protection from injury at the hands of its agents and servants.

The testimony of every witness except appellee shows, practically without dispute, that coming up to the station at Silsbee on the night in question the engine drawing the caboose in which appellee was riding made three stops; first, in order to allow the switch just beyond the station to be adjusted so as to let the engine and caboose in on the track leading up to the station or usual stopping place for passengers to alight; second, just after passing through the switch, and still before reaching such regular stopping place; and, third, at such regular stopping place. Appellee testified that he got off in front of the depot, but at the first stop made. It is appellee's contention that it was when the engine made the stop at the usual place for passengers to get off he attempted to alight, and that while he was in the act of alighting, in full view of the conductor, who saw and realized his dangerous position, the engine was caused, by a signal given by the conductor, to start with a sudden jerk, by reason of which he was thrown with his foot and leg under the wheels, which ran over and crushed them. This contention was supported by his testimony, but by his testimony alone. He testified that he attempted to get off right in front of the station opposite the door of the eating house, and that this was the first stop made by the train; that when he fell he commenced "hollering," and the train went about 50 feet from where he was hurt and stopped. He testified further that the switch did not have to be thrown to let the train in on the main line, running up to the station. Appellee identified the place where he fell, on a photograph of the premises, as right in front of the eating house and some distance west of the switch, that is, after passing the switch coming into the station. The engineer, the brakeman and one Park, a lineman on the engine,

testified that the engine stopped to allow the switch to be adjusted, which was done by the brakeman; pulled through the switch and stopped again to pick up the brakeman, and that when the second stop was made it was found that appellee had been run over and injured. Other witnesses testified that the engine coming in on the center track could not get up to the depot without stopping to have the switch thrown, unless there was some one there to throw it before the engine reached it. The brakeman, engineer and Park all testified that the brakeman on this train got off to throw this switch. These three witnesses and one Wilson, cashier of appellant at Silsbee, testified to finding appellee lying on the ground at a point east of the switch, just about where he would have been if he had attempted to get off when the first stop was made for the switch or while the engine was moving through the switch. Evans, appellee's employer, testified that he was shown the next morning by persons who picked appellee up, the spot where the injury occurred, that there was blood on the ground, and other indications to mark the place, and that this place was east of the switch, as testified by the other witnesses. The testimony of all of these witnesses marks definitely and distinctly the spot where the injury occurred, and, if it be true, then appellee could not have received his injury in the manner and under the circumstances testified to by him, and his injury could not have been caused by the negligence of appellant in starting the train with a sudden jerk while appellee was getting off at the proper place. If their testimony be true, appellee attempted to alight before the train reached the proper place, and missed his footing and fell with his foot and leg under the wheels of the caboose. It is true that these witnesses were all, with the exception of Parks, in the employ of appellant, and that that fact may probably be said to make them interested witnesses, but certainly they were not interested to the same extent nor in the same direct way as .appellee. This further is to be said with regard to their testimony and that of appellee. These witnesses were in a position to see what they say they saw and testified about, clearly and distinctly. There was nothing to disturb their cool and deliberate observation and recollection of the circumstances about which they testify. If their testimony is not true, it is difficult to account for it on any other theory than a deliberate intention to falsify the facts. On the other hand, when appellee received his injuries he was attempting to alight from the train in the dark. In the act of alighting he received his injury, his foot and leg being crushed under the wheels. His suffering must have been beyond human fortitude to bear without it affecting, to some extent, his powers of accurate observation and recollection of the place where, or the exact circumstances under which he received his injury. There is some excuse for his being mistaken. None can be found for a mistake on the part of the other witnesses as to the place where the accident occurred, and the place necessarily fixes the manner in which it occurred as altogether different from that testified by appellee, and especially as altogether different from the manner in which it is alleged to have occurred in his petition.

Dr. Reed and Dr. Reagan both testified as to statements made by appellee to them about the manner in which the injury occurred, the one to Dr. Reed having been made the day after the injury and the one to Dr. Reagan a few days thereafter. In both of these statements appellee stated that he was attempting to get off the caboose at the place where he thought people got off, and that in getting off his foot slipped under the wheels of the caboose. He stated to Dr. Reed, according to the testimony of this witness, that when he fell he found that he was not at the depot, that the train had not reached the depot, and also that his foot struck some inequality in the ground and slipped under the wheels. Evans also testified that he heard a statement by appellee to one Bass the night he was hurt, and that the substance of this statement was that appellee started to get out of the caboose when the train stopped and was holding on to the iron on the door, that the train started, the door came to and threw him off his balance and when he stepped he missed the platform. We have stated the facts alleged by appellee and testified to by him upon which he predicated negligence on the part of the conductor and others in charge of the train. The testimony of every witness except appellee is a specific denial of these facts. Considering the physical and, necessarily also, to some extent, the mental condition of appellee as affecting his capacity for accurate observation and recollection, and his statements made after the accident, directly contradictory of the facts essential to show negligence on the part of appellant, and adding thereto the weight of the testimony of all of the other witnesses, it appears to us that the verdict is so manifestly wrong and so opposed to the great weight and preponderance of the evidence that it can not be reasonably accounted for by any fair and dispassionate consideration of the evidence, but must be attributed to the sympathy or prejudice of the jury. We are of the opinion that a new trial should have been granted upon this ground as set up in the motion.

Upon further consideration we are of the opinion that there was error in that portion of the charge referred to in the fifth assignment of error. The allegations of negligence in the petition did not charge that the conductor caused the train to start; but that while plaintiff "was in the act of alighting in the presence and with the knowledge of the conductor, but before he had sufficient time to do so in safety and while he was in said perilous position of alighting, said train was carelessly, negligently and recklessly caused by defendant's agents to suddenly start." The court charged the jury in substance that if the conductor, knowing plaintiff's perilous position as he was in the act of alighting, and the danger to him of the starting of the train, notwithstanding such knowledge caused the train to be started, plaintiff would be entitled to recover. This was not the case made by the pleadings. We are of the opinion that the fifth assignment should be sustained.

For the reasons herein set out we adhere to our former judgment reversing the judgment of the trial court and remanding the cause. The motion for rehearing is overruled.    *Overruled.*

Writ of error dismissed for want of jurisdiction.