## HIGHSMITH v. HAMMONDS.

### Opinion delivered June 12, 1911.

1. EVIDENCE—VARYING WRITTEN CONTRACT BY PAROL.—A written contract may not be varied by parol evidence. (Page 403.)

2. SALES OF CHATTELS—BREACH OF WARRANTY—BURDEN OF PROOF.—Where, in an action for the purchase money of a chattel, the vendee relies for defense on a breach of a warranty, the burden is on him to prove such breach. (Page 403.)

3. SAME—BREACH OF WARRANTY—REMEDY.—Where a contract of sale of a stallion contained a warranty of the stallion's ability as a breeder, and provided that he should be bred to regular breeding mares, and that the dates of service should be kept, and that if he

should fail to breed up to the warranty he should be returned by a certain date, and be replaced with another stallion of equal value, the vendee cannot defend against a suit fon the purchase money by alleging a breach of such warranty without showing that the terms of the warranty had been complied with on his part, and that he had given notice of the breach or warranty or offered to return the stallion by the date agreed. (Page 403.)

Appeal from Crawford Chancery Court; *J. V. Bourland,* Chancellor; reversed.

STATEMENT BY THE COURT.

This action was brought by appellants to foreclose a mortgage given by appellee to secure the payment of his notes for the purchase money of a stallion sold to him. Appellee admitted the purchase of the stallion, the execution of the mortgage and purchase money notes, and set up a breach of a verbal and written warranty made to him on the purchase of the horse, and claimed damages on that account. The guaranty contract was introduced in evidence by appellee, as follows:

"GUARANTEE CONTRACT.

"Highsmith Bros., Importers of French Draft, Percheron, Belgian and German Coach Stallions.

·"Mulberry, Ark., Mch. 31st, 1908.

"Guarantee on the German Coach Stallion named Lustig, No. 4585.

"We, the undersigned, guarantee the above-named stallion to be a fifty per cent. breeder, bred to regular breeding mares. Said mares to be tried and re-tried and correct dates of service and trial and re-trial accurately kept. Providing the said stallion keeps in as sound and healthy condition as he now is and has proper care and exercise. If the said stallion should fail to be a fifty per cent. breeder with the above treatment, we agree to take the said stallion back, and give the said company another stallion of equal value. Providing the said stallion is returned to us at Robinson, Illinois, in as sound and healthy condition as he now is by 1st day of April, 1909.

"Highsmith Bros., Robinson, Ill."

The testimony further tended to show that of the mares served by the stallion much less than fifty per cent. of them had brought colts, that appellee had kept no record of the dates of

service, and could not swear the mares were regular breeding mares. They were tried and retried. "I couldn't give the exact date," was his statement. He claimed to have written one letter to appellants about the horse, which was returned uncalled for and since lost, and did not offer to return him to appellants before the first day of April, 1909, nor at all. He had sold the horse to his son-in-law, who had him in Kansas at the time of the trial.

The court found that the writing introduced in evidence by appellee was the contract of purchase, sale and guaranty between the parties; that the horse failed to fulfill the guaranty, and was only of the value of $150, and declared that appellee was not required under the contract to tender the horse back to appellants upon such failure to prove as warranted, but had the right to hold him and recoup damages for the breach of warranty and found that he had elected to do so. It rendered a decree in appellant's favor for $150, ordered the land described in the mortgage sold to pay it, cancelled all the purchase money notes given for the horse, and ordered them surrendered by appellants and filed with the papers in the case. From that decree appellants appealed.

*E. L. Matlock,* for appellants.

1. The court's finding that the horse failed to fulfill the guaranty is not sustained by the evidence. On this question the burden of proof was on the appellee.

2. Appellee clearly undertook to return the horse to appellant if it failed to prove to be a fifty per cent. foal-getter by the first day of April, 1909, upon complying with which condition he was to receive another horse of equal value. He could not put appellants in default without performing this condition precedent, unless such performance was waived by appellant. 35 Cyc. 163, par. 3. See also 30 Am. & Eng. Enc. of L. 152, par. 9; Tiedeman on Sales, 322, § 213; 35 Cyc. 290, par. f. Appellee's failure to return the horse within the time limited, and to make known to appellants that it had failed to fulfill the guaranty, and to give appellants opportunity to replace the horse with another, amounted to a waiver of the guaranty and an acceptance of the horse. 75 Ark. 206; 76 Ark. 74; 90 Ark. 585.

*C. A. Starbird,* for appellee.

1. The finding by the chancellor that the horse did not

fulfill the warranty is sustained by the uncontradicted evidence of the defendant and his witnesses.

2.   The language of the warranty is permissive, not peremptory.   Such being the case, appellee, on breach of the warranty, had the right to return the horse and receive another in exchange, or to retain him and sue on the breach.   56 N. W. 528, 529; 35 Cyc. 438; 57 N. W. 421; 75 N. W. 340, 342.

KIRBY, J., (after stating the facts).   The court correctly found that the written guaranty expressed the terms of the contract, and could not be varied by parol testimony.   The burden of proof was upon appellee to show a breach of this guaranty, that the horse was not "a fifty per cent. breeder, bred to regular breeding mares" under the conditions specified.   According to his own statement, the mares served by the horse were not known to him, nor proved to be, regular breeding mares, and, although he stated they were tried and re-tried, he kept no correct dates of the service, in accordance with the terms of the contract.   Even if a breach of the warranty was proved (and on this point we do not agree with the chancellor), the contract of sale or guaranty of the horse provided the method of settlement if he should not prove as warranted; that the guarantor should take the said stallion back and give the purchaser another of equal value if he was returned to the guarantor by the 1st day of April, 1909.   Appellee gave no notice to appellants that he claimed a breach of the warranty, nor did he return, or offer to return, the said horse to appellants before said date and receive another in his stead in accordance with the terms of the warranty, nor at all.   This he was bound to do under the contract, for this mode of compensation was exclusive of any other, and the only relief to which he was entitled, and, not having done so, he will be held to have accepted the horse as in all respects complying with the warranty. *Sessions* v. *Hartsook,* 23 Ark. 519.

It follows that the chancellor erred in rendering the decree, and it will be reversed, and the cause remanded with directions to enter a decree in accordance with this opinion.