FIRST NAT. BANK OF LAFAYETTE, IND., v. FULLER et al. (No. 8496.)

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 6, 1917. Rehearing Denied Feb. 10, 1917. On Motion for Rehearing, Feb. 10, 1917.)

1. APPEAL AND ERROR ⟨⟩742(1) — ASSIGNMENT OF ERROR—UNTENABLE REASON.

Since the reasons given to support an assignment of error constitute no part of the assignment itself, the assignment may be good, though the reasons urged in its support are untenable.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. ⟨⟩742(1).]

2. APPEAL AND ERROR ⟨⟩729 — ASSIGNMENT OF ERROR—SUFFICIENCY—STATUTE.

Where the evidence is undisputed, an assignment complaining of the giving of the peremptory instruction for defendants sufficiently shows ground of plaintiff's complaint, under Vernon's Sayles' Ann. Civ. St. 1914, art. 1612, prescribing the requisites of assignments of error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2998, 3013; Dec. Dig. ⟨⟩729.]

3. EVIDENCE ⟨⟩441(9)—PAROL EVIDENCE AFFECTING WRITING—SALE OF HORSE.

Where parties to the sale of two stallions made two written contracts, one concerning the purchase of a stallion and the other concerning a stallion taken in exchange for him, the date for any exchange for defects of stallion specified by each contract controls any prior oral agreement.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1787; Dec. Dig. ⟨⟩441(9).]

4. SALES ⟨⟩113—CONTRACTS—BREACH.

Where the parties specially limited the buyers' remedy to a return of the horse within a time specified, the buyers were limited to the relief agreed upon, in the absence of fraud in securing the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 286, 287; Dec. Dig. ⟨⟩113.]

5. SALES ⟨⟩168½(8)—RETURN OF PROPERTY.

A letter notifying the sellers that the second horse exchanged for the first had proven a failure, written after April 7th, was not a compliance with the contract that the horse be returned by April 1st.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 416; Dec. Dig. ⟨⟩168½(8).]

On Motion for Rehearing.

6. EVIDENCE ⟨⟩71—PRESUMPTIONS—RECEIPT OF LETTER.

In suit against buyers of stallion by contract stipulating for return by certain date, evidence of defendants' counsel *held* presumptive evidence that letter offering to return horse had been received by sellers.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 92; Dec. Dig. ⟨⟩71.]

Appeal from District Court, Tarrant County; R. B. Young, Judge.

Suit by the First National Bank of Lafayette, Ind., against William Fuller and others. From a judgment for defendants, plaintiff appeals. Judgment reversed and rendered.

Wm. J. Berne, of Ft. Worth, for appellant. L. R. Callaway, of Dallas, for appellees.

BUCK, J. May 18, 1911, defendants, residing at Kerens, Tex., purchased for breed-

ing purposes from J. Crouch & Son, residing in Indiana, a certain stallion named Elector. At this time Crouch & Son had a stable leased at Ft. Worth, Tex., where they kept a number of stallions. The contract of guaranty under which this horse was sold reads as follows:

"In the Matter of the Sale of the Imported German Coach Stallion Elector, 5443. Hoof No. 92.

### Guaranty.

"We have this day sold the imported German coach stallion Elector, No. 5443, to the Kerens Horse Improvement Company, of Kerens, Tex., and we guarantee the said stallion to be a satisfactory sure breeder, provided the said stallion keeps in as sound and healthy condition as he now is and has proper care and exercise.

"If the said stallion should fail to be a satisfactory sure breeder with the above treatment, we agree to take the said stallion back, and the said Kerens Horse Improvement Company agrees to accept another imported German coach stallion or other stock of equal value in his place, the said stallion Elector No. 5443 to be returned to us at our stables in as sound and healthy condition as he is now by April 1, 1912.

　　　　　　　　　　"[Signed]　J. Crouch & Son.
"Accepted:
　　"The Kerens Horse Improvement Company,
　　　"[Signed]　G. C. Simmons, Pres.
"Dated at Kerens, Tex., this 22d day of March, 1911."

Across the face of this written instrument was written or printed in red ink the following:

"Agents not permitted to change, modify, or sign any contract."

The horse, proving unsatisfactory for the purposes for which it was bought, was returned to the Ft. Worth stables of Crouch & Son within the time specified, and another horse, named Moser, was delivered to appellees, under a written contract identical in words with the former, except in the change of the name and number of the horse, and the date of return stipulated was April 1, 1913, and with the addition of the following paragraph:

"If the above-named stallion should become disabled before he is delivered, the said purchasers agree to accept another German coach stallion of equal value in his place."

Also the contract was shown to be dated at Ft. Worth, Tex., March 19, 1912.

On April 24, 1911, Crouch & Son sold the first note for $1,000 to the City National Bank of Lafayette, Ind., and it was by the bank subsequently transferred to Chas. W. Hickman. On May 22, 1912, appellant, First National Bank of Lafayette, discounted the note due December 15, 1913, and on April 9, 1913, discounted the note due December 15, 1914, and in both instances passed the proceeds as credits to the account of Crouch & Son.

On April 7, 1913, Hickman filed suit against Wm. Fuller and others, makers of the notes, on the note held by him, and, the appellant bank having been made party plaintiff by agreement, both parties sought to recover, claiming to be innocent purchasers for value, before maturity.

Defendants denied that either plaintiff was an innocent purchaser, and further pleaded a failure of consideration, in that the stallion Moser had not proved a satisfactory breeder, and further pleaded an oral agreement between defendants and one Jas. A. Hill, acting for Crouch & Son, whereby defendants would have until August 1, 1913, to exercise the right to exchange the horse Moser in case he should prove an unsatisfactory breeder; that defendants gave Crouch & Son this notice prior to August 1st, and the vendors failed to make the exchange, whereby the contract was breached by the vendors, and defendants were released from liability.

Plaintiffs denied that the oral agreement had been made, and further pleaded that, if made, it had been superseded by the subsequent written contract, requiring both horses, if unsatisfactory, to be returned to the vendors, that the first horse had been returned and the second given in exchange, and that the second horse had never been returned, nor had any tender been made within the time prescribed in the written contract.

Judgment was obtained by plaintiff Hickman for the amount claimed, and no complaint is made by defendants on account thereof. Judgment was rendered for defendants as to the two notes held by plaintiff bank, and the bank appeals. The verdict rendered was in response to peremptory instructions as to each plaintiff's claim.

Since it was admitted by counsel for appellant on the submission of this case that the appellant is not in the attitude of an innocent purchaser, we may simplify the discussion of the one question involved in this appeal by going directly to the issue of whether under the facts of this record defendants could have legally interposed, as against the vendors, Crouch & Son, the defense of an alleged oral agreement, made prior to the written contract, and in effect varying its terms as to the time in which an exchange of the last-purchased horse could have been made, in the event he proved unfit for the purposes for which he was sold. For if such defense would have been maintainable against Crouch & Son, under the facts shown in this record and under the admission made by appellant's counsel, the judgment denying the plaintiff bank a recovery should be sustained.

At the outset it is proper for us to consider appellees' objection to the consideration of appellant's single assignment, to wit, that the court erred in refusing to peremptorily instruct a verdict for plaintiff bank. In its motion for new trial appellant urged in three separate paragraphs the alleged error of the trial court in refusing a requested peremptory instruction for it, and in nine other paragraphs error was urged in the giving of a peremptory instruction for defendants as against plaintiff bank. In the body of these several paragraphs the reasons were given which appellant deemed sustained its contention of error in the action of the court: (1) In refusing the requested peremp-

tory instruction in its behalf; and (2) in giving the peremptory instruction for defendants. In its brief appellant relies on the first ground urged in the trial court, and sets out in the form of propositions substantially some of the grounds assigned in its motion for new trial. We think the assignment is good, and not subject to the criticism urged by appellees.

[1] The reasons given to support the assignment constitute no part of the assignment itself. The ruling or action of the court is the subject of the complaint, and constitutes the basis of the assignment. The assignment may be good, though the reasons urged in its support are untenable. Brackenridge v. Claridge & Payne, 91 Tex. 527, 535, 44 S. W. 819, 43 L. R. A. 593. In Land Co. v. McClelland Bros., 86 Tex. 179, 23 S. W. 576, 1100, 22 L. R. A. 105. Justice Gaines sought to lay down the rule for the guidance of courts and bar upon this somewhat difficult question of when an assignment should be held bad for generality and when not, and, after a rather lengthy discussion, said:

"Where an assignment of error is sufficiently specific to enable the court to see that a particular ruling is complained of, it should be held good, although it should fail to state the reason why such ruling is claimed to be erroneous. An assignment may be brief and yet specific, and brevity in such a case is commendable and accords with good practice. The reasons by which allegations of error are sought to be sustained find their * * * place in the propositions, statements, and authorities required to be set forth in the brief under and in support of the respective assignments."

Hence the Supreme Court held that, as to form, an assignment was good reading:

"The court erred in overruling the defendant's general demurrer to plaintiffs' original petition."

In the instant case there are no material conflicts of testimony. That the two horses were both unsatisfactory for the purposes for which they were bought, and that no effort was made by defendants to return the second horse or to effect an exchange, until after April 1, 1913, was uncontroverted by the evidence; and only one witness, T. F. Parker, one of the defendants, testified as to the oral agreement claimed to have been had between him, on behalf of the defendants, and Hill, for Crouch & Son, changing the date before which defendants were to notify Crouch & Son of the unsatisfactoriness of the horse from April 1st to August 1st. Such purported agreement was before the making of the first contract, and, as shown by Parker's testimony, was during the preliminary discussion or negotiations leading up to the purchase of the horse Elector.

[2] Hence, eliminating the question of appellant's being an innocent purchaser, with which we need not now concern ourselves, there was practically no issuable fact for submission to the jury. Therefore it may be held, so far as the case now before us is concerned, that the evidence is undisputed, and the issue is one of law upon such uncontroverted facts, and that an assignment complaining of the giving of the peremptory in-

struction for defendants sufficiently apprises the appellees and this court of the ground of appellant's complaint. If it fulfills this office the assignment is good. Article 1612, Vernon's Sayles' Texas Civil Statutes; Fuqua v. Pabst Brewing Co., 90 Tex. 298, 38 S. W. 29, 750, 35 L. R. A. 241; Railway Co. v. McArthur, 96 Tex. 65, 70 S. W. 317; Haight v. Turner, 44 Tex. Civ. App. 595, 99 S. W. 196; Frontroy v. Atkinson, 45 Tex. Civ. App. 324, 100 S. W. 1023; Railway Co. v. Walters, 49 Tex. Civ. App. 71, 107 S. W. 369, 372; Ry. Co. v. Williams, 111 S. W. 196; Railway Co. v. White, 97 Tex. 493, 80 S. W. 77; Wigglesworth v. Uvalde Live Stock Co., 126 S. W. 1180. Therefore we overrule appellees' objections to the consideration of appellant's assignment.

[3] It is elementary that all preliminary oral negotiations leading up to a written contract are presumed to have been merged into the written instrument, and especially is this true where the prior alleged agreement, if given vitality, would tend to vary the terms of the written contract. The parties, appellees and Crouch & Son, having entered into two written contracts, one concerning the purchase of the horse Elector and the other concerning the horse Moser, taken in exchange, and by the terms of each contract a date for exchange different from that claimed by virtue of the oral agreement having been specified, it must be held that the subsequent written contracts should control.

[4] Furthermore, the parties having specially agreed upon and limited the remedy to a return of the horse within the time specified in said last written contract, the defendants would be limited to the relief thus agreed upon, and cannot, in the absence of fraud alleged and proven on the part of Crouch & Son in the securing of the contract, be permitted to resort to a rescission, or other remedies. Oltmanns v. Poland, 142 S. W. 653, writ denied, Holbert v. Sanzenbacher, 159 S. W. 1054; Walters v. Akers (Ky.) 101 S. W. 1179, and the following Arkansas cases; Highsmith v. Hammonds, 99 Ark. 400, 138 S. W. 635; Crouch v. Leaks, 108 Ark. 322, 157 S. W. 390, 50 L. R. A. (N. S.) 774; Holland Bank Co. v. Haynes (Ark.) 187 S. W. 632; Harrison v. Walker (Ark.) 188 S. W. 17.

[5] But it is contended by appellees that Crouch & Son had, prior to April 1, 1913, abandoned their stables in Ft. Worth, and moved the residue of the horses held there, and other property owned in Texas, to Indiana, and hence the appellees could not make the desired exchange within the time specified in the written contract. But, even though it be conceded that, because the horses actually delivered to defendants, and especially the horse Moser, were delivered by Crouch & Son at the latter's stables in Ft. Worth, and that because such stables were maintained at Ft. Worth at the time of the making of both written contracts, appellees had the right to rely on Ft. Worth's being the place where further exchanges could be

made, as the necessity therefor might arise, yet neither by pleading nor evidence did defendants show that they had offered to return said horse to Ft. Worth, or to any other place till after April 1, 1913. In their first amended answer, filed November 30, 1915, they aver:

"That said Crouch & Son are nonresidents of the state of Texas, and reside, so defendants are informed, somewhere in the state of Indiana; that they own no property in Texas, nor have they any office, agent, or place of business in Texas, or any barn to which defendants may deliver said horse, or any place anywhere within the confines of said state where said horse can be taken by defendants and delivered to them or any person authorized to receive the same for them; that said horse is in possession of defendants at Kerens, Tex., and that they are able, ready, and willing to deliver the same to plaintiffs, or to said Crouch & Son, at any reasonable time or place designated by them, and hereby tender the said horse to plaintiffs and offer to deliver the same to them, at such reasonable time and place as the court may direct, and authorize, upon the cancellation and delivery to defendants of the notes sued on herein."

The evidence suggests that by letter written by defendant's counsel, after the filing of this suit, which was April 7, 1913, notice was sent to Crouch & Son at Lafayette, Ind., that the second horse had proven a failure, and requesting a further exchange. Even if this letter was in fact mailed, which is not shown, yet it did not constitute a compliance with the stipulation contained in the written contract that the horse should be returned by April 1, 1913. No offer to return the horse by said last-named date is shown to have been made. Hence we conclude that the defendants failed to establish by proper pleading or proof the contention that they were prevented from returning the horse within the time specified, because of the abandonment of the stables theretofore maintained by the vendors at Ft. Worth.

After a careful examination of the entire record, we conclude that appellant's assignment should be sustained, and that the judgment of the trial court should be reversed, and here rendered for appellant for notes Nos. 2 and 3, together with interest, attorney's fees, and costs of suit, and it is so ordered, and the judgment in other respects is undisturbed.

Reversed and rendered.

### On Motion for Rehearing.

[6] We have carefully examined appellees' motion for rehearing and fail to find anything therein which would justify a change in the disposition of the case heretofore made. However, said motion calls our attention to a bit of evidence which we apparently overlooked, and which, if given its proper effect, would probably render inaccurate the statement contained in our original opinion that the evidence failed to show that the letter written by defendant's counsel, after the filing of this suit, to Crouch & Son, at Lafayette, Ind., had been mailed. There was testimony to the effect that this letter, written by counsel for defendants, had been handed to a boy in the office of counsel with instruction to register it, and that a fee for registration had been given the boy for said purpose. The boy was not a witness in the case, and no one testified that the boy actually mailed the letter. But it appears that defendants' counsel testified that he had received the return registry receipt of such letter, though he had misplaced it in his office, probably by reason of his having moved his offce since writing the letter. This evidence, we think, would make a prima facie showing that the letter had in fact been received by Crouch & Son, and our statement or suggestion that there was a lack of evidence to establish the mailing of the letter is withdrawn. However, since this letter was written subsequent to the filing of the suit, and subsequent to the date of return of the horse stipulated in the contract, the mailing of the letter by defendants' counsel containing the notice did not affect the rights of the parties under such contract, nor would it impair any rights of appellants, or of Crouch & Son, which had theretofore become fixed.

The motion for rehearing is overruled.