# WILLIAM F. SMITH v. ELMER E. MELLEN and Another.[1]

December 8, 1911.

Nos. 17,338—(108).

**Broker's compensation — certain easement an encumbrance.**

> When a real estate broker is employed by an owner to sell real estate at a stipulated net price and upon certain terms, with the understanding that the broker shall have all in excess of the net price for his compensation, should the property sell for more, the broker is at liberty to enter into a contract to sell the premises, with other property, to a proposed purchaser for a gross consideration in excess of the owner's net price, provided such proposed purchaser is ready, willing, and able to purchase at the price and upon the stipulated terms. *Held:*
>
> 1. The complaint, fairly construed, states a cause of action by the assignee of the broker for damages for failure of the owner to complete the sale after notice that the purchaser was ready, willing, and able to purchase on the stated terms.
>
> 2. An easement acquired by the city for a street over a city lot, in condemnation proceedings, the street not having been opened, is an "encumbrance" upon the land, within the terms of a representation by the owner to his real estate broker that he is possessed of a good marketable title, free from all encumbrances and adverse liens and interest.

Action in the district court for Ramsey county by the assignee of D. R. Elder to recover $700, commission alleged to be due for selling a certain city lot. The complaint, in addition to the allegations found in the opinion, set out that defendants did not own or control a good marketable title to the lot; that an easement for a public street had been acquired across the westerly fifty-one feet of the lot; that by reason thereof the part of the lot owned in fee simple by defendants had been reduced by a strip fifty-one feet in width

[1] Reported in 133 N. W. 566.

[Note] As to negligence, fraud, or default of principal, or defective title as affecting real estate broker's commissions, see notes in 43 L.R.A. 593; 15 L.R.A. (N.S.) 1262; 24 L.R.A.(N.S.) 1182.

along the westerly side of the lot; that defendants had notice of this before the employment by Elder; that Elder had no notice thereof until after the agreement made with the purchaser; that after examination of title Anderson notified said Elder and said defendants he was ready, willing and able to proceed with the purchase of the lot except for the interest of the city of St. Paul in the lot, but defendants notified the purchaser and Elder they would not make any reduction in price, and that if the purchaser was not ready to buy the lot subject to the rights of the city, the agreement to sell would be canceled. The answer alleged that in August, 1910, the city of St. Paul took for public purposes the westerly fifty-one feet of the lot in question; that defendants were residents of the state of Illinois and knew nothing of this action on the part of the city of St. Paul and were not informed of such action by plaintiff; that D. R. Elder resided in St. Paul and had full knowledge of the taking of the street; and denied that Elder procured a purchaser for the property, and that Elder sold or transferred to plaintiff his cause of action against defendants. The reply was a general denial, except as to the residence of defendants. The case came on for trial before Dickson, J., who granted defendant's motion for judgment on the pleadings. From an order denying plaintiff's motion for a new trial, he appealed. Reversed.

*Todd & Mayo,* for appellant.

*Otis & Otis,* for respondents.

LEWIS, J.

The trial court ordered judgment for defendants on the pleadings and the ruling is to be tested by the sufficiency of the complaint.

When an owner engages an agent or broker to sell real estate upon stipulated terms and commission, the broker performs his part of the contract upon procuring a purchaser who is ready, willing and able to make the purchase and when the owner is duly notified. And the owner becomes liable to the broker for the consequent damages, upon his refusal to comply with the agreement within a reasonable time after the notice. The broker may receive his compensation from the owner, from the purchaser, or he may secure his

compensation by selling the property at an advance, provided, of course, the parties so agree. These rules are elementary, and are not controverted by defendants; but they assert that, when the owner agrees that the broker shall receive as his compensation all over and above the stipulated price to the owner, the broker does not comply with his contract when the purchaser offers to purchase the property in connection with other property belonging to a third party for a gross amount in excess of the owner's price.

This is correct as a proposition of law, for it implies that the purchaser is not ready, willing, and able to purchase the principal's property upon the stipulated terms. It only remains to be seen whether the facts stated in the complaint are as defendants claim.

Defendants employed one Elder, a broker, to procure a purchaser for lot 4, Auditor's subdivision No. 9, according to the recorded plat thereof on file and recorded in the office of the register of deeds in and for Ramsey county, at the price of $3,000 net to defendants, $1,000 thereof to be paid in cash and the balance on or before three or five years, with interest at six per cent. secured by first mortgage on the premises. Defendants agreed to pay Elder, upon procuring a purchaser ready, willing, and able to buy the lot upon these terms, as and for his commission, all over and above said sum of $3,000 that the purchaser would pay for the property.

The complaint then proceeds: "That pursuant to said agreement, on or about the 5th day of November, 1910, said Elder procured a purchaser, one C. W. Anderson, who offered and agreed, and who was ready, willing, and able, to buy the said lot, together with that certain property known as block five (5), Eustis' addition to St. Paul, Ramsey county, Minn., for the total price of $4,000, to be paid as follows, to wit: $1,000 to be paid in cash, $2,000 to be paid.on or before three or five years, such deferred payment to be evidenced by note and secured by first mortgage on said lot four (4) to be made and executed by the said Anderson, all as required by the said defendants; the sum of $1,000 to be paid by assignment of $1,000 par value of the preferred stock of the Stand Implement Manufacturing Company, of Minnesota, a corporation."

It is then alleged that Elder held an option for the purchase of

said block 5 for the sum of $300, and that he was at all times ready,, willing, and able to secure a conveyance of said lot to Anderson; that Elder in his own behalf, [and] as agent for defendants, ac-cepted the offer of Anderson and notified the defendants, that he-had procured a purchaser for said lot 4 "upon the terms to defend-ants as stated by defendants, and defendants then accepted said pur-chaser and agreed to make said sale of said lot to said Anderson; upon their said terms, and did furnish to said Anderson an abstract; of title to said lot."

The complaint further states that Anderson was at all times; ready, willing, and able to purchase said lot, and to pay the defend-ants the sum of $3,000 upon the terms and conditions as required by defendants. Elder's cause of action was assigned and trans-ferred to plaintiff, and judgment was demanded for the sum of $700.

Elder was at liberty to enter into any arrangement free from fraud, with Anderson, to induce him to purchase defendant's lot upon the stipulated terms. It was not necessary to obtain and pre-sent to defendants a contract from Anderson. McDonald v. Smith,. 99 Minn. 42, 108 N. W. 291. It is of no concern to defendants; that Elder agreed to sell Anderson the two tracts for $4,000 and take $1,000 in stock in a corporation. Defendants' liability does. not depend upon their right to enforce Elder's contract with Ander-son. If Elder should be unable to get Anderson to accept the title to block 5 and to deliver the $1,000 in stock, then he would lose his. compensation; but defendants have no interest in that contract, and' it may not have been necessary to set it up in this complaint.

This action is for Elder's damages for the failure to make the sale to Anderson, and the complaint fairly states that he was ready, willing, and able to make the purchase of defendants' lot upon the terms stipulated by them; that defendants were duly notified, had reasonable time to comply, but refused so to do. On this branch of the case a cause of action was stated, and the complaint should. have been sustained.

2. The complaint states that defendants represented to Elder that they were the owners of a good marketable title in fee simple, and!

that the lot was free from all liens and encumbrances, adverse liens, and interests. It is alleged that defendants did not own or control a marketable title to lot 4; that the city of St. Paul had acquired an easement by reason of the opening and extension of a certain street crossing the westerly fifty-one feet thereof, by reason of which the size of the lot was reduced on that side by a strip fifty-one feet in width; that Elder had no notice of the acquirement of this easement by the city, and that Anderson, upon discovering the same, notified Elder and the defendants that he was ready, willing, and able to proceed with the purchase of said interest of the city of St. Paul in and to said lot 4; that the defendants then notified Anderson and Elder that they would not make any reduction in the price or vary the terms of their offer, and if Anderson was not willing to buy the said lot subject to the rights of said city therein, or upon the terms as stated, then in such case said agreement of sale would be canceled and withdrawn. This presents an interesting question whether, under the covenants stated, the easement acquired by the city, by the right of eminent domain, is an encumbrance.

The leading case relied on by defendants, that it is not an incumbrance, is Ake v. Mason, 101 Pa. St. 17. The deed in that case contained the words "grant, bargain, and sell," which had been declared by statute to express a covenant "that the grantor was seised with an indefeasible estate in fee simple freed from encumbrances done or suffered from the grantor, * * * as also for quiet enjoyment against the grantor, his heirs and assigns, unless limited by express words contained in such deed." Upon the theory that entry by the public authorities to lay out a street under the right of eminent domain was not an act done or suffered by the grantor, and was not accomplished with the consent of the owner, the court held that the street was not an encumbrance within the meaning of the covenants. The affirmations as to title were much broader in the present case. Defendants represented to Elder that their title was free from all encumbrances.

In some jurisdictions it has been held that a railroad right of way, even when the road has been constructed, does not constitute an encumbrance. Under the peculiar wording of the covenants, some

courts have held an easement secured by the exercise of the right of eminent domain not within a covenant against encumbrances. The supreme court of Tennessee, in Lewis v. Woodfolk, 61 Tenn. (2 Baxt.) 25, placed emphasis on the time the warranty was given, and held that it was not an undertaking against the future exercise of the power of eminent domain, which implies that such a covenant would embrace a previous exercise of that power.

It was settled in this state, however, in Bruns v. Schreiber, 48 Minn. 366, 51 N. W. 120, that a railroad right of way constituted an encumbrance, within the general covenants of a warranty deed, even when the road had been constructed and was in the possession of the railroad company. It does not appear whether the right of way in that instance had been acquired by purchase or by the right of eminent domain; but the manner of its acquirement can make no difference in a case where the owner represents that there are no encumbrances.

In the present case it appears that the land was offered for sale according to the plat of record, and it is only fair to presume that no such street was provided by the plat. It is also fairly inferable that the street acquired by the condemnation proceedings had not been opened or worked, and it was alleged in the complaint that Elder had no knowledge of the proceedings to condemn. Whatever may have been in the minds of defendants when they made the representations as to title, the contract, as disclosed by the complaint, embraced the representation that there was no such street.

Reversed.