C. R. MILLER & BRO. v. MUMMERT et al. (No. 8576.)

(Court of Civil Appeals of Texas. Ft. Worth. March 31, 1917. Rehearing Denied May 19, 1917.)

1. APPEAL AND ERROR ⟐761—ASSIGNMENTS OF ERROR—PROPOSITIONS.

Rule 31 of the Court of Civil Appeals (142 S. W. xiii), providing that to each point stated as a proposition under each assignment of error there shall be subjoined a brief statement, in substance, of such proceedings, or part thereof, contained in the record, as will be necessary and sufficient to explain and support the proposition, with reference to the pages of the record, is not violated where the briefer, instead of quoting the evidence and findings in hæc verba, in good faith makes abbreviated statements based on the actual facts testified to, and the findings and other proceedings in the record, with reference to the pages of the record sustaining the statement.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3096.]

2. APPEAL AND ERROR ⟐740(2) — ASSIGNMENTS OF ERROR—MULTIFARIOUSNESS.

An assignment of error is not multifarious, which states various reasons why a conclusion of law is erroneous, since the reasons given are not part of the assignment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3028.]

**3. CORPORATIONS  47—CHANGE OF NAME—EFFECT.**

An authorized change in the name of a corporation has no effect on its identity, nor on its rights and obligations.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 134, 135.]

**4. CORPORATIONS  445—PROPERTY—POWER TO CONVEY.**

In absence of collusion between a grantor corporation and its grantee to defraud grantor's creditors, deed from solvent corporation conveys good title, stripped of equitable lien claimed by grantor's creditor, whose debt is not reduced to judgment at time of conveyance, whether or not grantee had notice of claim.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1784.]

**5. CORPORATIONS  625—DISSOLUTION—REMEDY OF CREDITORS.**

Where a solvent corporation is dissolved, leaving debts due to creditors, and assets are distributed among stockholders, remedy is, in the absence of actual fraud, against stockholders, under Vernon's Sayles' Ann. Civ. St. 1914, art. 1206.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2473.]

Buck, J., dissenting in part.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Bill for an injunction by C. R. Miller & Bro., a corporation, against Harry B. Mummert and others. From an order dissolving a temporary injunction, complainant appeals. Reversed, and injunction perpetuated.

Bryan, Stone & Wade and W. C. Blalock, all of Ft. Worth, for appellant. Flournoy, Smith & Storer, of Ft. Worth, for appellees,

BUCK, J. On October 4, 1913, C. R. Miller & Bro., Manufacturers, a corporation having its domicile in Dallas county, filed suit in the district court of Tarrant county against Harry B. Mummert and the sheriff and first deputy sheriff of Tarrant county, alleging that said plaintiff had been since July 17, 1912, the legal and equitable owner in possession of certain lots in the city of Ft. Worth, Tarrant county, described as lots 1, 2, and 3, block 33, Union Depot addition to said city, holding said lots under a certain deed of conveyance, of date July 17, 1912, executed by Miller Bros.-McCrary Company, a private corporation, duly acknowledged for grantor therein by the proper officer of said corporation, which deed was on said date delivered to the plaintiff by the grantor, and was by the plaintiff on September 26, 1912, filed for record in the office of the county clerk of Tarrant county, and thereafter duly recorded. It was alleged that the plaintiff paid the grantor a valuable consideration for said lots, and that at the time of said conveyance the said grantor was the owner of the legal and equitable title to same, and was in possession thereof under and by virtue of a deed of conveyance to it in the usual and proper form, made and executed on August 3,

1911, by the Texas Overall Company, a private corporation, and that the grantor in the last-mentioned deed received from grantee a valid consideration for said lots, and that said last-mentioned deed was by the grantee therein duly filed for record on May 14, 1912, in the office of the county clerk of Tarrant county, and was by said clerk thereafter duly recorded in the deed records of said county. Plaintiff further averred that in a certain cause pending in the county court of Tarrant county for civil cases, the defendant Mummert on October 4, 1912, recovered a judgment against the Texas Overall Company in the sum of $245.75, on which judgment said defendant Mummert caused the clerk of said court to issue an execution against the Texas Overall Company, dated September 3, 1913, directed to the sheriff or any constable of Tarrant county, commanding any such officer to levy upon and sell any property that might be found in said county belonging to the Texas Overall Company, for the satisfaction of said judgment; that defendant Mummert placed said execution in the hands of defendants the sheriff and deputy sheriff of Tarrant county, and caused said officers to execute said writ by levying upon the hereinbefore described lots; that said officers did levy said execution on said property on September 15, 1913, and did thereafter, by direction of defendant Mummert, advertise said property for sale on October 7, 1913, at public vendue. Plaintiff sought an injunction against said defendants, to restrain each of them from proceeding further in the matter of the sale of the above-described property, alleging that defendant Mummert had no interest whatever in the above-described lots, and had no such interest since the execution of the deed from the Texas Overall Company to Miller Bros.-McCrary Company aforesaid. A temporary injunction having been granted as prayed for, upon a hearing the injunction was dissolved, from which order and judgment the plaintiff appeals.

The judgment below recites, in part, as follows:

"And it further appearing to the court, after hearing the evidence and argument of counsel, that the Texas Overall Company, a corporation, has been dissolved, and at the time of its said dissolution was justly and truly indebted to defendant herein, Harry B. Mummert, which now amounts to $288.83, which has never been paid, and that said defendant recovered judgment in the county court of Tarrant county for civil cases, Tarrant county, Texas, against said Overall Company, on which there is now due and unpaid said sum of $288.83; and it further appearing to the court that the deed purporting to have been made by said Texas Overall Company to Miller Bros.-McCrary Company, under which plaintiff herein claims, made after the dissolution of the said Texas Overall Company, was invalid and passed no title to said Miller Bros.-McCrary Company to said property described," etc.

Therefore the court adjudged and decreed that the defendant Mummert's debt against

said Texas Overall Company should be and constitute an equitable lien on the property described. From the court's findings of fact filed herein the following facts may be noted, to wit:

(1) On August 2, 1911, at a meeting of the stockholders of the Texas Overall Company, a resolution was passed to dissolve said corporation, and a certificate of dissolution was prepared and signed by the proper officers and forwarded to the secretary of state and filed in the latter's office on August 7, 1911.

(2) That at the time of said dissolution the Texas Overall Company was solvent, and paid all of its debts except the one sued upon by defendant Mummert.

(3) That the defendant Mummert sued the Texas Overall Company on a contract for $222.50, on July 28, 1911, in the county court of Tarrant county for civil cases, and obtained a judgment against the Texas Overall Company for $245.75, with interest, on October 4, 1912.

(4) That on August 2, 1911, at a meeting of the stockholders of said Texas Overall Company and prior to the resolution, the directors of said company authorized the sale of the lots in controversy, on which was located said company's manufacturing plant, and being all of the property owned by it, except notes and accounts, to Miller Bros.-McCrary Company, which company had not at that time been incorporated, for $16,000 cash; and C. R. Miller, the president of said Texas Overall Company, was authorized by said resolution to execute and deliver deed to the purchaser.

(5) That on August 2, 1911, at a meeting of the organizers of Miller Bros.-McCrary Company, a resolution was passed authorizing the purchase of said property mentioned at said price of $16,000.

(6) That the application for the incorporation of Miller Bros.-McCrary Company was dated August 2, 1911, and was forwarded to the secretary of state, along with the certificate of dissolution of the Texas Overall Company, and in the same envelope, and was filed in the office of the secretary of state on August 7, 1911.

(7) That the same parties who were stockholders in the Texas Overall Company, and at the same meeting in which they had voted to dissolve said corporation, organized the Miller Bros.-McCrary Company, and made an application for charter for said latter company.

(8) That the $16,000 paid by Miller Bros.-McCrary Company, or the organizers of said company, for said lots, was paid partly in cash and partly in stock in the Miller Bros.-McCrary Company, issued to some of the organizers of said company, who had been stockholders in the Texas Overall Company, and that said Miller Bros.-McCrary Company did not assume the payment of the claim of the defendant Mummert, which afterwards

ripened into the judgment aforesaid. That the consideration so paid was distributed among the stockholders of the Texas Overall Company, each stockholder receiving, either in cash or in stock in the new company, the face value of his stock in the dissolved company.

(9) On May 8, 1912, a deed was executed to said lots to the Miller Bros.-McCrary Company, signed by Texas Overall Company, by C. R. Miller, president, and that said deed was dated back to August 3, 1911, and was not impressed with the seal of the corporation grantor.

(10) On July 7, 1912, Miller Bros.-McCrary Company, acting by its vice president, E. B. Miller, duly authorized, executed a deed to said property to the plaintiff, C. R. Miller & Bros., Manufacturers.

(11) C. R. Miller was president of each of the three corporations herein mentioned, and testified in the trial, on October 4, 1912, of the case of H. B. Mummert against the Texas Overall Company.

(12) An appeal was taken from this judgment in the name of the Texas Overall Company, which had theretofore been dissolved; the appeal bond being signed, "The Texas Overall Company, by Its Attorneys," and by C. R. and E. B. Miller, as sureties. The judgment of the trial court was affirmed by the Court of Civil Appeals.

(13) That the plaintiff corporation, as well as Miller Bros.-McCrary Company, had notice of the debt of Mummert against the Texas Overall Company prior to the execution of the two several deeds, the one in the name of the Texas Overall Company to Miller Bros.-McCrary Company, and the other from the Miller Bros.-McCrary Company to the plaintiff.

(14) The court found the facts as to the issuance of the execution and the levy on the property in controversy and the advertisement for sale thereof, in accordance with the pleadings of the plaintiff heretofore mentioned, and that no sale was ever made of said property because of the injunction issued, and that no payment had ever been made on said judgment.

(15) That the Texas Overall Company and the Miller Bros.-McCrary Company are one and the same corporation, there having been only a change in the name.

(16) That on May 2, 1914, plaintiff made a deed of conveyance of the property in controversy to one of its employés, F. W. Page, in-consideration of his note of $3,500.

(17) That the plant of the Miller Bros.-McCrary Company on the lots in controversy was destroyed by fire April, 1912, leaving said Miller Bros.-McCrary Company in assets the lots in controversy, and accounts and bills, etc., and that thereafter plaintiff company was organized and undertook to purchase said lots.

(18) The court further found as a question of fact though we do not adopt this finding,

that neither Miller Bros.-McCrary Company nor plaintiff company was an innocent purchaser of said property for value, without notice of the defendant Mummert's debt, and any lien he might have against said property, and that the transfer of said property to the plaintiff was a fraud upon the rights of the creditors of the Texas Overall Company and the Miller Bros.-McCrary Company, including the rights of Mummert.

There is no finding by the court as to when the Miller Bros.-McCrary Company was dissolved, but the statement of facts shows that it was dissolved, the date not being given, and that at the time of its dissolution the stockholders of said corporation received par value for their stock, and that said stockholders had more than enough property subject to execution to satisfy the amount of the judgment in the case of Mummert v. Texas Overall Company, and that the corporation was solvent at the time of its dissolution and paid all its debts except the Mummert claim.

Appellant has presented in its brief some 14 assignments of error, but, in the view the majority take of the case, we do not deem it necessary to take them up and discuss them seriatim.

[1] Appellee objects to a consideration of each of said assignments because of an alleged failure to brief them in accordance with rule 31 for the Courts of Civil Appeals (142 S. W. xiii), and for failure to subjoin to each the statement required by such rule. The basis of the objection is that the statements do not contain excerpts from the statement of facts, and other portions of the record, to sustain them, but rather the conclusion of the briefer as to what such facts establish. For illustration, under the first and second assignments of error, the statement recites:

"The court found that, if the title to the property in controversy passed to appellant, it passed subject to an equitable lien in favor of the appellee Mummert. (Tr. p. 33.) * * * He also found that at the time of the dissolution of the Texas Overall Company it was solvent and had paid all of its debts except the debt of appellee. (Tr. p. 27)."

In other words, instead of quoting the evidence and findings in hæc verba, the briefer makes a shorthand rendition of the evidence shown, and the proceedings had, and the facts found, with reference to the pages of the record sustaining the statement. We are not prepared to say that, where such abbreviated statements are shown to be made in good faith, and to be based upon the actual facts testified to by witnesses, and the findings of the court, and other proceedings contained in the record, and where reference is made under each statement to that portion of the record where the basis therefor may be found, such a form of statement should be held to be a violation of the rule, though we do not commend such practice. In part, the rule reads as follows:

"To each of said propositions there shall be subjoined a brief statement, in substance, of such proceedings, or part thereof, contained in the record, as will be necessary and sufficient to explain and support the proposition, with a reference to the pages of the record. This statement must be made faithfully in reference to the whole of that which is in the record having a bearing upon said proposition, upon the professional responsibility of the counsel who makes it, and without intermixing with it arguments, reasons, conclusions, or inferences."

Under appellee's general objection to all of the assignments, we have not had our attention directed to any statement by appellant which is inaccurate, and which we think can be said to be violative of the rule. Hence we overrule this objection of appellee.

[2] Appellee further objects to certain of the assignments because of an alleged multifariousness. We do not think this objection can be sustained. For instance, appellant's third assignment reads as follows:

"The court erred in paragraph 3 of his conclusions of law, wherein he found that the defendant Mummert had an equitable lien upon the property in controversy to secure the payment of the amount due him on said deed, because: (a) Said finding of law is not based upon sufficient findings of fact to sustain it. (b) Because there are no pleadings to support such a conclusion of law. (c) Because such conclusion of law is not sustained by any evidence in the record," etc.

The reasons given for the assignment of error do not constitute any part of the assignment. First Nat. Bank v. Fuller et al., 191 S. W. 830, by this court, and the cases there cited, including Land Co. v. McClelland, 86 Tex. 179, 23 S. W. 576, 1100, 22 L. R. A. 105.

[3] Since the court found, and the evidence sustains such findings that in the dissolution of the Texas Overall Company and the incorporation of the Miller Bros.-McCrary Company, there was merely a change in the name of the corporation, and that the two companies were in fact one and the same corporation, we need not take the time to discuss the question of whether the deed executed in the name of the Texas Overall Company, by its president, C. R. Miller, subsequent to the dissolution of said Overall Company, and without the impress of the seal of the corporation, would have conveyed title, had the grantee been an independent corporation. For an authorized change in the name of a corporation has no more effect upon its identity as a corporation than a change in the name of a natural person has upon his identity. It would not affect the rights of the corporation, nor lessen nor add to its obligations. 7 R. C. L. p. 129, § 99, and cases there cited. Hence we are limited in our inquiry upon this point to the issue of whether or not the deed from the Miller Bros.-McCrary Company to C. R. Miller & Bro., Manufacturers, conveyed title to the property in controversy free of any lien asserted by Harry B. Mummert.

[4] For all that appears of record at the time said deed was executed by Miller Bros.-McCrary Company, such corporation was

solvent, with assets sufficient to pay its stockholders and creditors in full. As hereinabove stated, it does not appear when this corporation was dissolved, but evidently subsequent to the execution of this deed. The majority see no reason why it was not authorized to convey good title to the property in controversy, relieved of any equitable lien claimed by defendant Mummert. 7 R. C. L. p. 573, § 561, says:

"Of course, a corporation holds its property subject to the payment of the corporate debts, and when a corporation sells or transfers its entire property to a purchaser, knowing the fact, the latter is chargeable with knowledge that the property is subject to the corporate debts, and that equity will, in proper cases, allow the corporate creditors to follow the property into the hands of the purchaser for satisfaction of their claims. This is frequently done when a corporation sells its property to another, thereby forming a new corporation, composed mostly, if not wholly, of the same persons. The transaction is fraudulent and void as to the creditors of the old corporation not assenting thereto, and persons who hold stock in the new corporation, solely in consideration of their claims as creditors or stockholders of the old one, are chargeable with notice of the fraud, and are not innocent purchasers as against creditors of the old corporation who did not assent to the change. The latter may follow the specific property of the old corporation, as in other cases of transfers fraudulent as to creditors. Still a purchaser from a corporation is not bound to follow the price in to the hands of the seller, and see to the just and proper distribution of it among the latter's stockholders and creditors. In the absence of fraudulent connivance or collusion to wrong the stockholders or creditors, the purchaser discharges his obligation by paying the price to the competent officers of the selling corporation, who are the agents of the stockholders, and to whom the latter must look for the protection of their rights. * * * The right of the creditor to impeach the transaction depends upon its fraudulent character. The mere fact that the corporation, in disposing of its property, dealt with persons who at the same time were charged with the duty of representing its interests, does not, by itself, render the transaction fraudulent. The mere fact that a corporation, at the time of conveying its property, failed to provide for the payment of a single contested claim, does not raise a presumption that the sale was made to defraud creditors, where the circumstances tend to show that there was no actual fraud."

"The purchase by one corporation of the property of another is not different in law from a similar contract between individuals, except perhaps in the fact that legislative authority may be required in the one case and not in the other. In neither case is the vendee liable for the torts or contractual obligations of the vendor, unless such liability was voluntarily assumed by the former." 7 R. C. L. p. 156, § 128; Railway Co. v. Newell, 73 Tex. 334, 11 S. W. 342, 15 Am. St. Rep. 788.

Therefore it may be safely said that, in the absence of fraud and collusion on the part of and between the Miller Bros.-McCrary Company and C. R. Miller & Bro., Manufacturers, the conveyance of July 17, 1912, passed to the grantee title stripped of any equitable lien in favor of Mummert, and irrespective of question of notice on the part of the grantee of the claim asserted by Mummert. But the court found as a fact that the transfer of the property in controversy to plaintiff—

"was a fraud upon the rights of the creditors of said Texas Overall Company and the Miller Bros.-McCrary Company, including rights of the defendant Mummert herein."

By its fourteenth assignment appellant assails this finding. The undisputed testimony, that of C. R. Miller, shows that appellant paid to its grantee $3,500 for the vacant lots after the destruction of the plant in April, 1912; also that the grantor corporation was solvent at the time of its dissolution, and there is no suggestion that it was insolvent at the time of the conveyance; also that the stockholders of the grantor corporation were solvent at the time of the dissolution. We have been cited by appellee to no evidence, and we find none in the record, which in the opinion of the majority establishes fraud on the part of the grantee in receiving the property, or on the part of the grantor in conveying it. It is in evidence that C. R. Miller was the president of both corporations, that as such he had knowledge of the pendency of the Mummert suit, and testified in the case of October 4, 1912, some weeks subsequent to the transfer of the property. The court found that the officers and directors of the grantee corporation had notice of defendant Mummert's debt and lien. C. R. Miller testified:

"I suppose the suit of Mummert against the Texas Overall Company was pending in the county court at the time of the dissolution of the Texas Overall Company. At the time of the dissolution there was a meeting of the stockholders. I don't suppose any of them knew of the pendency of this suit, save me, and I never thought of it. I was a stockholder in the Texas Overall Company. No arrangements were made to take care of a judgment in this case, should one be rendered; the stockholders had plenty of money; they were able to pay it if a judgment was rendered. Nothing was said about it by me to the other directors, at that time or any other time. I don't know whether they knew anything about the pendency of the suit; I never thought of it. * * * Over a year, probably a year and a half, after the dissolution of this company, the case was tried in the county court. I was present at the trial and testified. * * * The reason it did not occur to me to say anything about the pendency of this suit at the time of the final meeting of the stockholders of the Texas Overall Company was I never gave it any thought, because the stockholders were financially responsible, and if it owed any debts they were certainly collectible. I had no idea they would get a judgment. * * * I suppose it was the duty of the attorneys to set up in that case, when it was tried, that the Texas Overall Company had been dissolved. I didn't see they had anything to do with it. G. H. and W. E. Connell and myself were certainly responsible."

I. N. McCrary testified in part:

"As I remember, C. R. Miller verbally agreed that all debts accrued by the Texas Overall Company, with the exceptions of the notes due banks and foreign accounts, would be settled without any of the new members becoming liable. This was at the time of the dissolution of the Texas Overall Company and the organization of the Miller Bros.-McCrary Company. At that time, as I remember, there was something said about a suit against the Texas Overall

Company; but I do not remember the names of the parties in the case, as it was at that time that C. R. Miller assumed all liabilities against the Texas Overall Company other than notes due banks and foreign accounts such as those due mills in the East for raw materials."

The majority, at least, consisting of Chief Justice CONNER and Associate Justice DUNKLIN, are of the opinion that the fourteenth assignment should be sustained. The writer dissents from this conclusion, being of the opinion that the trial court, who heard the witnesses testify, was justified in concluding that the conveyance mentioned was in fraud of the rights of the defendant Mummert, and was made with a knowledge of his claim, and with the intention to deprive him, in part, at least, of the means of satisfying his debt, should he recover judgment, and that the fourteenth assignment should be overruled. But, since the majority has concluded otherwise, said assignment is sustained, and the judgment reversed.

[5] In the opinion of the majority, the evidence having been fully developed, no useful purpose could be subserved by remanding the case for another trial. This conclusion is, in addition to what has been heretofore said, fortified, if not made conclusive, by a consideration of article 1206, Vernon's Sayles' Texas Civil Statutes, which, in the absence of actual fraud, provides the remedy for creditors, in the case of a dissolved corporation. If the corporation was solvent at the time of its dissolution, and the assets were distributed among the stockholders, the majority are of the opinion that the remedy of appellee was against such stockholders.

Therefore judgment will be here rendered for appellant, perpetuating the injunction prayed for in the court below.