WESTERN UNION LIFE CO. OF HOUSTON et al. v. ENSMINGER.

No. 1604.

Court of Civil Appeals of Texas. Eastland.

Feb. 19, 1937.

Sullivan & Wilson, of Dallas, and Childers & Shaw, of Abilene, for plaintiffs in error.

Smith & Eplen, of Abilene, for defendant in error.

FUNDERBURK, Justice.

The parties to this suit, omitting the names of certain individuals as unnecessary to be given, were W. H. Ensminger, plaintiff, and Texas Central Life Association (hereinafter designated TCLA), Mutual Life & Loan Association of America (hereinafter designated ML&LA), Bankers Life & Loan Association of Dallas, Tex. (hereinafter designated BL&LA), Western Union Life Company of Houston, Tex. (hereinafter designated WULC), defendants. Said defendants were state-wide mutual insurance associations or corporations. The TCLA and WULC were the same, the former name having been changed to the latter.

The TCLA issued a certificate of insurance August 5, 1933, to Mollie Ensminger, promising upon her death and upon conditions therein stated to pay to "W. H. Ensminger, beneficiary, $1.00 collected from each member in good standing in this group for said member's death but in no case shall the amount paid the beneficiary hereunder exceed the sum of $1,-000." On November 8, 1933, the insured died while a member in good standing. All requirements were duly complied with to entitle said beneficiary to be paid the amount provided in the certificate. On or about December 25, 1933, Ensminger was paid by draft the sum of $46.50, which draft was cashed on or about February 1, 1934, upon representations by the agent of said defendants—according to the allegations of plaintiff's pleading—that the draft represented the amount due under the certificate; that the class of which Mollie Ensminger was a member had been dissolved; that no further assessments would or could be made; and that the affairs of the association had been audited and handled in an honest and painstaking manner. Such representations were alleged by plaintiff to have been believed and relied on by him, and to have induced him "to accept said nominal sum of $46.50 in settlement of the claims and liabilities under and by virtue of said certificate," etc. Plaintiff alleged that the said representations were false; "that the said draft did not represent the amount due plaintiff, but that the plaintiff was entitled to the full face value of his certificate, to-wit, the sum of $1,000; that said class had not been dissolved, but that on the contrary, more than 600 members of the Texas Central Life Association were bodily sold, transferred and delivered to the Mutual Life & Loan Association for, and in consideration of, the sum of $2,500. Also, that the defendant Texas Central Life Association qualified under the law known as House Bill 303 (Acts 1933, c. 245 [Vernon's Ann.Civ.St. art. 4859f]) on February 7, 1934, and in order to qualify under the law, was required to have at least 500 members; that all of said representations above set out * * * were false and made for the purpose of settling or attempting to settle the liability under and by virtue of said policy with the plaintiff for a nominal sum * * *; that the plaintiff relied upon and believed said representations made by him, the said Mixon, [alleged agent of the defendants] to be true when he cashed said draft and was thereby deceived and defrauded out of the balance of the money due him under and by virtue of said certificate *unless this alleged release* set up by the defendants is set aside." (Italics ours.) As grounds for avoiding the settlement and release, it was further alleged that, upon the death of the insured, the policy (meaning the amount of $1,000) became a liquidated demand; that there was no bona fide dispute as to such amount, and the payment of $46.50, in the absence of a bona fide dispute as to the amount due plaintiff, "is without consideration and does not bar recovery of the balance due this plaintiff. * * * Wherefore, plaintiff says that because of the allegations set out in paragraphs Nos. 3 and 4 above, that said nominal *settlement release* (italics ours) is null and void; that the same should be set aside and held for naught," etc.

Allegations to show a cause of action against the ML&LA were in substance that about January 8, 1934, TCLA transferred its members to ML&LA; that the latter, on about February 17, 1934, accepted and assumed the outstanding liabilities of TCLA "under and by virtue of the policies issued by or in force with the" TCLA. (Since no judgment was rendered against ML&LA, any further statement as to it is deemed unnecessary in this connection.)

To show liability of BL&LA, plaintiff's petition, in substance, alleged that on or about February 20, 1934, BL&LA "accepted the transfer of the membership to it from the Mutual Life & Loan Association of America and issued to all of said members its general assumption, a copy of which is hereto attached, marked Exhibit

'E' and made a part hereof for all purposes as fully as if it were copied herein in toto; * * * that a part of the valuable assets of the Texas Central Life Association, to-wit, the mortuary fund, together with a part of the membership was sold, transferred, assigned and delivered by the directors of the Texas Central Life Association to the Mutual Life & Loan Association, as hereinbefore alleged; that by the last named association said assets were again transferred to the Bankers Life & Loan Association as hereinbefore alleged; that among the assets of a state wide mutual insurance association the members and mortuary fund are of the most valuable; that the defendants Mutual Life & Loan Association and in turn the Bankers Life & Loan Association having received said members and mortuary fund from the Texas Central Life Association are liable to this plaintiff and in law are bound and obligated to pay this plaintiff the amount due him," etc.

Liability of WULC was by plaintiff's allegations predicated upon the averment that it was the same as TCLA and upon the further ground that it had received a large number of members, the charter of TCLA and $1,000, which the latter had deposited with the Insurance Commissioner as required by law.

Upon a nonjury trial the court gave judgment for plaintiff for the sum of $607.50, with interest, against WULC and BL&LA only, and denied all other relief claimed by any of the parties. BL&LA brought the case to this court by writ of error, having filed a supersedeas bond. WULC also sued out a writ of error, having filed a writ of error bond without supersedeas.

■ Defendant in error, Ensminger, directs our notice to the fact that the brief of WULC contains no assignments of error. Our jurisdiction to consider and afford relief against errors of the trial court, other than fundamental errors, is dependent upon assignments of error incorporated in the brief. Clonts v. Johnson, 116 Tex. 489, 294 S.W. 844. See, also, long list of authorities cited in Panhandle & S. F. Ry. Co. v. Burt (Tex.Civ. App.) 71 S.W.(2d) 390, to which list, for the sake of completeness up to the time of said decision, should be added Blackmon v. Trail (Tex.Com.App.) 12 S.W.(2d) 967. No change in this important interpretation of the law was effected by the amendments in 1931 of R.S.1925, arts. 1844 and 1757 (Vernon's Ann.Civ.St. arts. 1844, 1757); Lamar-Delta Levy Imp. Dist. v. Dunn (Tex.Com.App.) 61 S.W.(2d) 816. The judgment as against WULC must therefore be affirmed, no fundamental error appearing.

■ The brief of BL&LA contains purported assignments of error numbered from 1 to 27, inclusive. Assignments of error Nos. 1, 2, 3, 14, 19, 20, and 22 are not attempted to be briefed, and are, therefore, waived.

■ The ruling of the court alleged in assignment of error No. 4 to be error was "in not granting this defendant Banker's Life & Loan Association of Dallas, Texas, an instructed verdict." The case being tried without a jury, there was no procedure applicable which could have involved any question of instructing or not instructing a verdict. The record does not support the assignment of error, in that it does not show any such action or ruling as that mentioned in the assignment. Assignments of error must be supported by the record, and, if not, that alone requires them to be overruled. Foust v. Jones (Tex.Civ. App.) 90 S.W.(2d) 665, and authorities cited.

The only action or ruling of the court mentioned in any of the assignments of error Nos. 5 to 27, inclusive, is "in granting" or "in rendering" or "in entering" judgment against the BL&LA. As a part of each of said assignments of error is the statement of a reason why it is claimed the court erred "in granting" or "in rendering" or "in entering" the judgment. There is a difference of opinion on the part of the members of the court regarding the sufficiency of any of said assignments of error to authorize consideration. The writer will later state his individual views on that question.

■ The court is unanimously of the opinion that, if the assignments be sufficient (as in the majority view they are), the judgment against BL&LA cannot be permitted to stand.

Plaintiff in his pleading acknowledges that $46.50 was paid to and accepted by him in settlement of his claim. Plaintiff's pleading, aided as it was by references therein to the plea of release of WULC and BL&LA, must be construed to acknowledge execution of a release of said claim.

If a valid release was given, the only judgment which the court could properly have rendered was one in favor of the defendants. The release must be held to have been valid unless Ensminger discharged the burden of pleading and proving its invalidity. In attempted discharge of a part of such burden, plaintiff pleaded in substance that the release was void for two reasons: First, because it was procured by fraud, and, second, because it was without consideration. Assuming the sufficiency of plaintiff's pleading to avoid the release on both grounds, no question of such sufficiency of pleading being presented, and it not clearly appearing to the contrary, we are of the opinion that the evidence conclusively failed to show that the release was void either because of any fraud chargeable to BL&LA or because of any want of consideration to support the release.

■ There was an absence of any evidence to show that BL&LA had any connection with the transaction upon which the allegations of fraud were based. There was no evidence that Mixon, through whom it was alleged that fraud was committed, was an agent of BL&LA. Aside from that, there was no evidence that any of the alleged misrepresentations made by Mixon were in fact untrue. There was no evidence that the proper assessment was not made by those in charge of the affairs of TCLA upon receipt of notice of Mrs. Ensminger's death. On the contrary, the evidence was undisputed that such assessment was made; that a certain total sum was collected; that it was properly prorated among the claimants entitled to same; and that the $46.50 paid to plaintiff was the proper prorata part due the plaintiff.

■ In this connection it may be remarked that, even if the release was avoided, there was no evidence to establish any liability on the part of BL&LA. There was no evidence that it received a dollar applicable to the payment of plaintiff's claim. Its assumption of any obligations that ever were the obligations of TCLA was by the very terms of the contract of assumption exclusive of plaintiff's claim.

■ There was equally an absence of any evidence to show a want of consideration for the release. It may be conceded there was no dispute as to the amount due. That is not conclusive of the question. Claims uncertain in the amount due are the same as claims in dispute within the principle here insisted upon. Poe v. Texas & P. Ry. Co. (Tex.Civ.App.) 95 S.W.(2d) 505, 507. The undisputed evidence shows that the claim was not for a liquidated amount. There were two or more factors of uncertainty. The amount was dependent upon the variable number of members in the particular group which included Mrs. Ensminger at the time of the assessment. It was also dependent upon the number of those in such group who paid their assessments. Still further it was dependent upon the number of deaths of members in the group during the same month, since in case there were more than three the contract provided for a proration. These were all uncertain matters which of necessity rendered uncertain the amount due. Under these circumstances, barring any question of fraud, accident, or mistake, which we must in considering the question of lack of consideration, the payment by TCLA and acceptance by plaintiff, of $46.50 as the amount due, by the very fact of thereby making certain what was uncertain, furnished a consideration to support the release.

But just as an avoidance of the release because of fraud would not have entitled plaintiff to judgment against BL&LA, neither would an avoidance of the release on the ground of want of consideration have any such effect. The fact would yet remain as conclusively established by the evidence that no liability was shown.

It is, therefore, our conclusion that the trial court should have rendered judgment in favor of said BL&LA; that the judgment in so far as it awarded recovery against BL&LA should be reversed and here rendered; that as to said defendant plaintiff take nothing; but that in all other respects the judgment of the court below should be affirmed, and it is accordingly so ordered.

The writer is unable to escape the conviction that this court has no jurisdiction to consider the propositions of BL&LA which are dependent upon purported assignments of error Nos. 5 to 27, inclusive, just the same and for the same reasons we have no jurisdiction to consider the propositions of WULC because of the absence of any assignments of error to support them. All of purported assignments of error Nos. 5 to 27, inclusive, allege that the "court erred in granting" or in "rendering" or in "entering" judgment against the

BL&LA, with a statement, in each, of a different reason why the court so erred. Assuming, as is deemed fair, that no distinctions were intended by the use of the slightly varying phraseology, and that in each of said purported assignments it was intended to allege in effect that the court erred in rendering judgment against the BL&LA, there was but one assignment of error, unless the statement of the different reasons why the court erred had the effect of making the repeated single allegation of error more than one assignment.

It is believed that the authorities unquestionably establish as a sound legal proposition that a statement of one or more reasons why it is claimed that a court erred by some ruling, action, or particular part of the proceedings in a case is not a part of an assignment of error. In Clarendon L. I. Agency Co. v. McClelland, 86 Tex. 179, 23 S.W. 576, 1100, 1103, 22 L.R.A. 105, overruling contrary dicta in Pearson v. Flanagan, 52 Tex. 266, 279, it was declared that a statement of reasons was not essential to a good assignment of error and that "the reasons by which allegations of error are sought to be sustained find their proper place in the propositions, statements, and authorities required to be set forth in the brief," etc. Upon the authority of this decision it was said by the same court in Brackenridge v. Claridge, 91 Tex. 527, 44 S.W. 819, 822, 43 L.R.A. 593: "The assignment is good, though the reasons urged in its support may be untenable." In Fuqua v. Pabst Brewing Co., 90 Tex. 298, 38 S.W. 29, 30, 750, 35 L.R.A. 241, Judge Denman, speaking for the Supreme Court, said it was the "settled practice to disregard the reasons given in an assignment, and to treat the same as if such reasons had been omitted." See, also, Panhandle & S. F. Ry. Co. v. Burt (Tex.Civ.App.) 71 S.W.(2d) 390; Golden Rod Oil Co. v. Noble (Tex.Civ.App.) 233 S.W. 524; First Nat. Bank v. Fuller (Tex.Civ.App.) 191 S.W. 830; C. R. Miller & Bro. v. Mummert (Tex.Civ.App.) 196 S.W. 270. In Clonts v. Johnson, 116 Tex. 489, 294 S.W. 844, 846, is this clarifying statement: "There is a substantial difference between an assignment of error and a proposition submitted thereunder. The one complains of some action of the court, and the other merely sets forth the reasons why such action is erroneous. It takes the assignment to reach the ruling, and it is the ruling that is to be reviewed by the appellate court."

But, granting that a statement of reasons thus held to constitute the subject matter of propositions, etc., is not an essential part of an assignment of error, does it follow that a statement of the reasons, although unnecessary, may not aid and thereby render sufficient an otherwise insufficient assignment of error? It seems to me it would logically so follow. But, whether so or not, this very question was answered by the Supreme Court in Cammack v. Rogers, 96 Tex. 457, 73 S.W. 795, 796. The question was propounded in reference to an assignment of error regarded as insufficient because it specified two independent rulings of the court, and, after detailing in the certificate the circumstances that the assignment was "followed by appropriate propositions and statements explaining each of the two questions raised and rulings complained of," the Court of Civil Appeals requested the Supreme Court to answer the question: "May it [the assignment of error], under such circumstances, be aided and explained by the propositions and statements?" The answer of the Supreme Court was: "The decisions * * * hold that propositions in briefs do not supply the place of a valid assignment." The proposition that insufficient assignments of error cannot be aided by propositions is supported by the following authorities: Cannon v. Cannon, 66 Tex. 682, 3 S.W. 36; International & G. N. Ry. Co. v. Hinzie, 82 Tex. 623, 18 S.W. 681; Jackson v. Cassidy, 68 Tex. 282, 4 S. W. 541; City of San Antonio v. Alamo Nat. Bank, 52 Tex.Civ.App. 561, 114 S.W. 909; Tyler County State Bank v. Shivers (Tex.Civ.App.) 281 S.W. 264; Chapman v. Reese (Tex.Civ.App.) 268 S.W. 967; Standard Acc. Ins. Co. v. Williams (Tex.Civ. App.) 4 S.W.(2d) 1023; Atwood v. Natural Pet. Co. (Tex.Civ.App.) 7 S.W.(2d) 964; Garonzik v. Green (Tex.Civ.App.) 275 S. W. 184; State Teachers' Mut. Life Ins. Co. v. Mims (Tex.Civ.App.) 74 S.W.(2d) 549; Largent v. Etheridge (Tex.Civ.App.) 13 S.W.(2d) 974; International & G. N. R. Co. v. Boykin (Tex.Civ.App.) 85 S.W. 1163; Kaack v. Stanton, 51 Tex.Civ.App. 495, 112 S.W. 702; Steely v. Texas Imp. Co., 55 Tex.Civ.App. 463, 119 S.W. 319; O'Farrell v. O'Farrell, 56 Tex.Civ.App. 51, 119 S.W. 899; Provident Nat. Bank v. Webb, 60 Tex.Civ.App. 321, 128 S.W. 426; La Beaume v. Smith, Albin & Peay (Tex. Civ.App.) 247 S.W. 623.

It is a fair assumption that it never would have been contended that a statement of

the reasons, or propositions, designed to demonstrate that the court had made a wrong ruling or had acted or proceeded contrary to law, was a part of an assignment of error, but for a misconception of what an assignment of error really is.

Upon an appeal the assignments of error by the appellant or plaintiff in error correspond to the plaintiff's petition in the trial court. They perform the same function as a pleading. The petition in the trial court and the assignments of error in the appellate court are alike, in that they are not intended to have any probative effect. To set out reasons in connection with, and as purportedly a part of, assignments of error is analogous to alleging in plaintiff's petition matters of evidence by which it will be sought to prove the facts required to be alleged. The subject matter of a plaintiff's petition consists of allegations of issuable, provable facts, as contradistinguished from allegations of evidentiary facts tending to prove the former. Similarly, the subject matter of assignments of error consists of allegations of error in rulings, actions, or particular parts of the proceedings in a case as contradistinguished from the allegations of reasons or matters demonstrative of wrong action on the part of the court. A further parallel is to be seen in the fact that in a petition any ground of recovery not alleged is waived so far as the particular case is concerned, the same as in assignments of error the right to have reviewed any wrong ruling, action, or part of the proceedings in a case, not alleged to be erroneous, is waived. Just as the allegations in a pleading may be so general as not to constitute "a statement * * * of the facts constituting the plaintiff's cause of action." (R.S.1925, art. 1997), so assignments of error may be so general as not to identify, "enable the court to see," or direct the attention of the court to any particular ruling, action, or proceeding claimed to have been illegal and prejudicial.

Both the Legislature and the Supreme Court, the latter acting under express grant of constitutional authority, have undertaken to prescribe the requisites of assignments of error and the legal consequences of an absence, or insufficiency, of same. The Legislature has enacted that assignments of error distinctly specify the *"grounds"* on which appellant or plaintiff in error relies and that "All errors not distinctly specified are waived." R.S.1925, art. 1844.

In the immediately following clause provision is made that "an assignment shall be sufficient which directs the attention of the Court to the error complained of." Id. The Supreme Court by a rule which yet remains in force, unless there be a conflict with the above statute, provides that "The assignment of error must distinctly specify the *grounds of error* relied on * * * and a *ground of error* * * * not distinctly specified in reference to that which is shown in the record, or not specified at all, shall be considered as waived, unless it be so fundamental that the court would act upon it without an assignment of error as mentioned in rule 23." (Italics ours.) Rule 24 (142 S.W. xii). Another rule provides that, "To be a distinct specification of error, it must point out that *part of the proceeding* in the record in which the error is complained of, in a particular manner, so as to identify it, * * * with such reasonable certainty as may be practicable, in a succinct and clear statement, considering the matter referred to. * * *" (Italics ours.) Rule 25 (142 S.W. xii). Examples of what would not be a sufficient specification are given in still another rule, as follows: "assignments of error which are expressed only in such general terms as that the court erred in its rulings upon the pleadings, when there are more than one, or in its charge when there are a number of charges, or the verdict is contrary to the law, or to the charge of the court, and the like, *without referring to and identifying the proceeding,* will not be regarded by the court as a compliance with the *statute* requiring the grounds to be distinctly specified, and will be considered as a waiver of errors, the same as if no assignment of errors had been attempted to be filed." (Italics ours.) Rule 26 (142 S.W. xii).

It seems to me the only question which could reasonably arise as to whether any part of the rules as above quoted are inconsistent with and, therefore, superseded by, the subsequent amendment in 1913 of said article 1844 (Acts 1913, c. 136), would be with reference to the clause added by said amendment and reading "* * * an assignment shall be sufficient which directs the attention of the court to the error complained of." If this provision of the statute, properly construed, should be held to have changed the previously existing requisites of assignments of error as prescribed by said rules and former statute, then to

that extent the rules have been superseded. This is an extremely important question in the present discussion. Its true answer is dependent upon the meaning of the phrase "error complained of," or, even more specifically, the meaning of the word "error" in said phrase. If the word "error," as here used, means an "error of law" in the sense of a misinterpretation or misapplication of some rule or principle of law or statutory provision, then it may be conceded that the amendment of the statute did repeal at least, in part, said rules. In that case, it would not be essential to specify in an assignment of error any ruling, action, or particular part of the proceedings since same would be but the evidence or demonstration of the error of law. Under this view the preceding clause "All errors not distinctly specified are waived" would, of course, likewise refer to errors of law in the same sense with the effect that the waiver declared would be a waiver of the right to have the case reviewed on account of the misinterpretation or misapplication of any other or different rule or principle of law or statutory provision. A result of the statute as thus construed would be to render "propositions" as distinguished from assignments of error wholly unnecessary; since assignments of error would be propositions as formerly understood. Under such view, the function of assignments of error as they existed under the rules and decisions prior to the amendment would be analogous to the statement of reasons which were wholly unnecessary and the statement of reasons or propositions would become the indispensable requisite of assignments of error.

To my mind there are the most compelling reasons why this statutory provision cannot be so construed. The former statute and rules employed the words "error" and "errors" interchangeably and as synonymous with the phrases "ground of error" and "grounds of error." There is no room for argument that "grounds of error" referred to "rulings," "actions," or "particular parts of the proceedings." As already shown, the statement of reasons was not essential. The old statute remained unchanged by the amendment in its requirement that the *"grounds* on which" the appellant or plaintiff in error "relies" be specified and that "all *errors* not distinctly specified are waived." (Italics ours.) In other words, the amended statute uses the words "grounds" [of error] as synonymous with the word "errors," precisely as the statute and rules had always done. This precludes any reasonable interpretation of the amendment to the effect that it changed the meaning of the word "error." The phrase " * * * an assignment shall be sufficient which directs the attention of the court to the error complained of" must necessarily mean the same as if, instead, it had read: "An assignment shall be sufficient which directs the attention of the court to the ground of error complained of." It means the same thing as if it provided that "An assignment shall be sufficient which directs the attention of the court to the ruling, action, or particular part of the proceedings complained of." It is an elementary rule of statutory construction that, when an amendment of a statute employs the same words as a former statute which have received a settled construction by the Supreme Court, they are presumed to be used in the same sense, unless the contrary clearly appears.

Did the statute and rules prior to the amendment of said article 1844 make any stricter or more onerous requirements as to the sufficiency of an assignment of error? That question, I think, is conclusively answered in the negative. In Clarendon L. I. Agency Co. v. McClelland, supra, Judge Gaines, speaking for the Supreme Court, said: "It is to be borne in mind that the statute and rules which require errors to be assigned were intended primarily for the relief of the appellate courts, and to secure a prompt dispatch of the business that should be brought before them. They should be given a reasonable and practical construction, and not one calculated to embarrass suitors in the appellate tribunals by unnecessary restrictions. It is certain that it was never intended to hedge either the courts of civil appeals or the supreme court around with technical and arbitrary requirements, so as to cut off the approach of such parties as seek relief in good faith from the consequences of supposed errors committed to their prejudice in the trial courts." This language has sometimes been quoted as authority for considering assignments of error that did not comply with the statutes and rules. It is not authority for any such proposition as that the appellate courts' jurisdiction is invoked by a purported assignment of error, which, as a ground of error, specifies no ruling, action, or particular part of the proceedings. On the contrary, it was in

effect declared as an indispensable requisite of an assignment of error that it be "sufficiently specific to enable the court to see that a particular ruling is complained of." Did the subsequent amendment of the statute require less? Certainly not, it seems to me. There would seem to be no ground for a difference of opinion that, if a purported assignment of error be sufficiently specific to direct "the attention of the Court to the [ground of] error complained of" as required by the statute, it would necessarily have to be "sufficiently specific to enable the court to see that a particular ruling [action or part of the proceedings] is complained of." In Clarendon, etc., Co. v. McClelland, supra, the court, in the use of the above language declaring for a liberal interpretation of the rules, was discussing the necessity of the statement of reasons or propositions as essential parts of assignments of error. Nothing was said susceptible of the construction that the court intended to dispense with the previously recognized necessity that assignments of error be specific. That requirement was repeated in the amendment of article 1844, and the last-quoted statement from Judge Gaines' opinion is to the same effect as the added clause of the amended statute. The natural conclusion is that the purpose of the amendment to the statute was to make clear that by the requirement of distinct specification no more was demanded than that the assignment direct the attention of the court to the ground of error complained of.

Premising that the subject-matter of sufficient assignments of error are rulings, actions, or parts of the proceedings in a case, and that all rulings, actions, or parts of proceedings not embraced as grounds of error in the assignments of error are waived, let us now consider the question of the sufficiency under the present record of the single assignment of error in question to the effect that the court erred in rendering judgment against BL&LA. The pleadings of all parties tendered issues of fact duly joined. The case was tried without a jury. The judge decided the issues of fact as well as the issues of law. No conclusions of fact and law were made a part of the record. The presumption is that the trial judge concluded that certain fact issues joined by the pleadings were or were not established by the evidence. Upon the questions of law raised the judge presumably reached certain conclusions. Such conclusions of fact and law in his

opinion required a judgment for the plaintiff. If the court reached no wrong conclusions of fact or law, and there was no fundamental error, the judgment is undoubtedly correct. If the judgment is not correct, and there was no fundamental error, then it must be because of one or more wrong conclusions of fact or law, or both. If the court wrongly concluded that one or more facts were or were not established by the evidence, or reached a wrong conclusion upon a question of law, or the applicability of the law to the facts and a different judgment would have been required had correct conclusions been drawn, then such wrong conclusions were the "grounds of error" required to be specified in the assignments of error. Not being specified, they were waived. If waived, there was no wrong in rendering judgment against said BL&LA. The rendering of judgment under such circumstances would not be the ruling action, or part of the proceedings which, under the statute and rules, constitutes the "error" (ground of error) to which an assignment must be sufficient to "direct the attention of the court."

In this connection, the reasons for the statute and rules requiring assignments of error and prescribing the requisites thereof should be considered. Undoubtedly the principal reason was to conserve the time and effort of the appellate courts, in the public interest, by relieving them of the necessity of considering each and every ruling, action, or part of the proceedings in a suit in order to determine if thereby some legal right of the appealing party was violated or denied. Such purpose was assured by provision to the effect that all grounds of error not embraced in the assignments of error should be waived. If the statute and rules are to serve this manifest purpose, then the appellate courts will never be under the necessity of considering whether rulings, actions, or parts of the proceedings not made the "grounds of error" in any of the assignments were right or wrong.

At first great difficulty was encountered by the Supreme Court to give practical effect, in cases tried without a jury, to such purpose of the statute and rules. An interesting history of such difficulty was recited by Judge Bonner in Hardin v. Abbey, 57 Tex. 582. It is there shown that the difficulty was met by the promulgation of rule 27 (142 S.W. xii) providing that "In cases submitted to the judge upon the law and

facts, the assignments of error shall be governed by the same rules as in other cases, and the party desiring to appeal should, as a predicate for specific assignments of error, request the judge to state in writing the conclusions of fact found by him separately from the conclusions of law." The Legislature recognized this rule by prescribing the time in which the judge should comply with such request. R.S.1925, art. 2247 (as amended by Acts 1931, c. 76, § 1 [Vernon's Ann.Civ.St. art. 2247]). Thus was provided a procedure by which the conclusions of fact of the judge in a nonjury case take the place and perform the function of a special verdict in a jury case. Each conclusion (finding) of fact upon which the conclusions of law, and ultimately the judgment itself are based, becomes by this procedure a ruling to the effect that the evidence does or does not establish a particular fact, which ruling, being thus made a matter of record, enables a party to meet the requirement of the rules by specifying the very ruling (ground of error) as to which it is proposed to contend in the appellate court that the legal rights of such party have been denied him. If the judge in a nonjury trial errs in any conclusion (finding) of fact or conclusion of law and such conclusion be not made the "ground of error" specified in any assignment of error, why would it not be waived, if not fundamental, under the mandatory provision of both statute and rules? If waived, what error could there be in "rendering" or "entering" judgment in accordance therewith? Would it not be the mandatory duty of the court in such case to render such judgment? Could any plausible contention be made in a case tried by a jury and wherein a special verdict is rendered, comprising a number of issues altogether fully supporting a judgment for one of the parties, that an appealing party could omit to predicate any assignment of error upon the ruling or action of the court in submitting, or refusing to submit, or refusing to set aside, any particular issue, and yet procure a review of such ruling or action of the court merely by alleging as the only ground of error that the court erred in rendering judgment against him? But one answer, it seems to me, can be made to these questions which will at all accord with the undoubted purpose of the statute and rules, rather than defeat such purpose. Mere allegations of error as to the action of the court in rendering or entering judgment without specifying so as to direct the attention of the court to the particular finding would no more logically be sufficient in one case than in the other. Any other conclusion would show that the adoption of rule 27 for at least its avowed purpose of enabling a party to comply with the rules as to specifying grounds of error was wholly unnecessary, and its total effect was to give an appealing party a mere option to lighten his own labors.

The correctness of these conclusions has been recognized in many decisions, those most in point with reference to the necessity of procuring conclusions of fact and law, when in a nonjury case it is sought to procure a review of such conclusions, being Hardin v. Abbey, supra; Douglass v. Duncan, 66 Tex. 122, 18 S.W. 343; Harvey v. Ogilvie, 66 Tex. 185, 18 S.W. 448; Kidd v. Dugan, 2 Willson, Civ.Cas.Ct.App. § 50; Earle v. Blankenbecker (Tex.Civ.App.) 297 S.W. 231.

To guard against misunderstanding, it may be well to observe that it may happen in a case that the act of rendering a particular judgment is, in truth, the ruling or action of the court which constitutes the ground of error intended to be relied on. In such a case undoubtedly it would be a good assignment of error merely to so allege. For example, suppose in the instant case the judge upon request had filed conclusions of fact and law, but had rendered the wrong judgment thereon. Such action could be reviewed upon an assignment to the same effect as the assignment in question. Such, however, is not the case presented. There being no conclusions of fact and law shown by the record, it could not be made to appear to this court by the record that a different judgment was rendered than that which the conclusions required. When we look to the reasons why it is claimed that the court erred in rendering or entering judgment, it is clear that the real grounds of error which it is sought to have us review consist of unidentified, unspecified conclusions of fact or of law. If wrong rulings may be reviewed upon such an assignment of error, why, in any case, could not the rulings or actions of the court in, for instance, the admission of incompetent evidence, the exclusion of admissible competent evidence, the submission of an incorrectly stated issue to the jury, or one having no support in the evidence or established by the undisputed evidence, or even the action of the court in overruling a motion for continuance, be presented by an assignment simply alleging that the court erred in rendering the judgment? In all such cases alike merely to

allege as the only ruling or action of the court complained of that the court erred in rendering judgment is to generally allege every possible ground and to specify no ground of error at all within the meaning of the statute and rules., It is like alleging in plaintiff's petition that the defendant is liable without stating any fact from which such a conclusion would follow. If such an assignment of error be held sufficient, then we have the anomalous situation of a party waiving all errors in the conclusions of fact and law, by not making them the grounds of error in any of the assignments of error, and then completely avoiding the effect of such waiver and defeating the principal purposes of the law, by simply alleging that the court erred in rendering judgment which such conclusions, unless avoided, required.

In order to repel, if I can, any impression that these conclusions result from a hypercritical insistence upon an exact compliance with rules of procedure, or, in other words, "technicalities," popularly so called, I deem it advisable even though regrettably extending this opinion, to show that a most important public policy is involved.

A question of our jurisdiction is involved. The authorities cited as supporting the action of this court with reference to the brief of WULC on account of the absence of any assignments of error undoubtedly establish that proposition. If it is a question of our jurisdiction, certainly there can be no escape from the conclusion that we cannot waive the insufficiency in assignments of error which by reason of such insufficiency do not invoke our jurisdiction. Certainly I think it may be regarded as a fundamental proposition which no court would gainsay that want of jurisdiction—legal power to act—cannot be waived. One of the most unfortunate decisions in the books, the contribution of which to the uncertainty and confusion regarding the question at issue being incalculable, is Cammack v. Rogers, supra, which, while holding that propositions could add nothing to the sufficiency of assignments of error at the same time said that courts of civil appeals, although not required to consider an assignment of error admittedly insufficient because it specified two independent rulings of the court as the grounds of error, had the discretion to do so. That decision as affects the question now under consideration had one of two effects, first, to hold that a want of jurisdiction may be waived at the discretion of a court of civil appeals, or, second, that a

question of the sufficiency of assignments of error is not a jurisdictional question. It is incredible that the court then recognized that sufficient assignments of error were jurisdictional, and yet intended to hold that a court of civil appeals could waive its want of jurisdiction. It seems more reasonable to assume that the court did not at the time have in mind that the statute and rules made the sufficiency of assignments of error jurisdictional, or else that a distinction was to be recognized between an insufficiency because of specifying no ruling or action of the court, and an insufficiency because specifying two or more distinct rulings or actions. At any rate, subsequent decisions hereinbefore cited settled at least that the assignments of error are jurisdictional; and we are not called upon in this case to consider the authority of this court to waive the insufficiency in an assignment which does specify a ground of error, and is faulty only in that it specifies two or more. The rules plainly provide that "assignments of error * * * without referring to and identifying the *proceeding* will not be regarded by the court as a compliance with the statute requiring the grounds to be distinctly specified, and will be considered as a waiver of errors, the *same as if no assignment of errors* had been attempted to be filed." (Italics ours.) Rule 26, supra. The statute (article 1844) in its provision for a waiver does not say that an absence of assignments of error shall constitute a waiver but that all errors "not *distinctly* specified are waived." (Italics ours.) I can see no escape from the proposition that a purported assignment of error which does not direct the attention of the court (enable the court to see) that any particular ruling, action, or part of the proceedings is made the ground of error, of which a review is sought, is precisely the same as no assignment of error, and leaves the reviewing court without jurisdiction in the one case if it does in the other.

If a want of jurisdiction resulting from the insufficiency of assignments of error appears to the court from the record or briefs, then it can scarcely be argued that our duty can in any degree depend upon the existence or absence of objections to a consideration of the assignments because of such insufficiency. To reiterate, the purpose of the law and rules requiring assignments of error and in prescribing the requisites of same, as well as the legal results of the absence or insufficiency thereof, does not alone concern an appel-

lee or defendant in error. On the contrary, the main purpose is to relieve overcrowded dockets, to enable the appellate courts to function more expeditiously and effectively by relieving them of time-consuming labors which a compliance with the statutes and rules would render unnecessary. To illustrate: A sues B for damages, averring, let us say, two distinct grounds of negligence. B answers with a general denial and alleges two grounds of contributory negligence, assumed risk, and unavoidable accident. A replies with allegations of discovered peril. The case is tried without a jury and judgment rendered for the defendant. A appeals upon a record containing no conclusions of fact and law. How can he demonstrate to the appellate court that he has been denied any legal right? As against the presumption in its favor, he will be under the necessity of showing that the judgment cannot be supported under any ground which may exist under the pleadings. But let us suppose that as a matter of fact not shown of record, however, that the trial judge found every issue in favor of A, except one of the two grounds of contributory negligence, as to which, however, there was no evidence to support the judge's conclusion. By compliance with rule 27 this sole basis of the judgment for the defendant would be disclosed and a single assignment of error specifying the one conclusion of fact as the ground of error would enable the appellate court to determine the only real question in the case. Nothing else in the whole record would have to be considered. Incidentally it would allow A to present that question with a very short brief, but that fact is relatively unimportant. If A may sufficiently assign as error the action of the court in rendering judgment for B in connection with a statement of as many different reasons as there are possible grounds upon which the judgment could rest, each reason alleging as a part thereof the fact or facts to show that the judgment could not properly rest upon such ground, then the labors of the appellate court would be just the same as if there existed no law requiring assignments of error; but, on the contrary, the law required the appellate court to search the record to determine the existence of all possible errors. This supposed case differs only in a matter of degree from any other case tried without a jury and in which there are no conclusions of fact and law, and in which it

is sought to challenge the conclusions of fact or law. The extra amount of labor unnecessarily imposed upon the appellate courts if the statute is interpreted to make such requirement is simply incalculable.

A serious problem confronts the Legislature as to providing just measures for the relief of the appellate courts. The questions of policy involved are: Shall the right of appeal be restricted? Shall more courts be created? Shall the courts be relieved of labors unnecessary to the due administration of justice, and thus enable them to do the work required without restrictions upon the right of appeal, or the creation of more courts? In my humble opinion, the present statute and the rules long ago promulgated by the Supreme Court, if properly understood, applied and enforced, would afford the greatest measure of relief possible without the creation of additional courts, without any restrictions on the right of appeal, and without the denial of any right of any party litigant.

If I am in error in the view that the 1913 amendment of article 1844, providing that " * * * an assignment shall be sufficient which directs the attention of the Court to the error complained of," did not change the meaning of the word "error" to something different from "ground of error," and if in fact such amendment rendered inapplicable all the decisions to the effect that reasons or propositions were no part of assignments of error, and cannot aid an otherwise insufficient assignment of error, then, in my opinion, we have erred in this case in not considering the propositions of WULC. If "error" does not mean a ruling, action, or part of the proceedings in a case, but means an error of law, which is to say, some misinterpretation or misapplication of a rule or principle of law, or of a statutory provision which has resulted in a wrong judgment, and any assignment of error is sufficient "which directs the attention of the court to the error complained of" in that sense, I see no escape from the conclusion that the propositions of WULC, although having no semblance of assignments of error as formerly understood, were sufficient to direct the attention of the court to the errors complained of. If propositions may aid assignments of error and meet this requisite test, then it seems to me that any statement of a

reason or proposition designed to allege that the court committed an error of law must be held sufficient. This the propositions in the brief of WULC did.

LESLIE, Chief Justice (concurring).

The particular assignments above discussed, and on which the appeal is disposed of, are not to be in all respects commended, but the majority of this court has concluded that said assignments may be considered as sufficient to give this court jurisdiction to determine the questions presented. We are aware of the distinction between assignments and propositions germane thereto, as pointed out in Clarendon Land Inv. Agency Co. v. McClelland, 86 Tex. 179, 23 S.W. 576, 1100, 22 L.R.A. 105, but the language of the above assignments, taken as a whole, may, we think, be regarded as sufficient to direct the attention of the court to the errors complained of. In this view we are governed by the opinions of our Supreme Court in such cases as Thraves v. Hooser (Tex.Com.App.) 44 S.W.(2d) 916; Cammack v. Rogers, 96 Tex. 457, 73 S.W. 795; Morrison v. Neely (Tex.Com.App.) 231 S.W. 728; Chapman v. Reese (Tex. Civ.App.) 268 S.W. 967; Id., 114 Tex. 583, 278 S.W. 1114.